**.UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**CHELSIE BURROUGHS**                 **CIVIL ACTION NO.: 5:25-cv-01933**

**VERSUS**                            **JUDGE ALEXANDER C. VAN HOOK**

**KTBS, LLC**                         **MAGISTRATE JUDGE HORNSBY**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**FRCP 12(b)(6) MOTION TO DISMISS**

Respectfully Submitted,

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By:  /s/ *Elizabeth M. Carmody*
        Elizabeth Mendell Carmody, #25792
        Luke D. Whetstone, #37355

333 Texas Street, Suite 1700
P. O. Box 22260
Shreveport, LA 71120-2260
Telephone: (318) 221-6277
Telecopier: (318) 227-7850
elizabeth.carmody@cookyancey.com
luke.whetstone@cookyancey.com

ATTORNEYS FOR KTBS, LLC

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................iii-iv

I.  Introduction...................................................................................................1

II.  Factual and Procedural Background ........................................................2

III.  Law and Argument ......................................................................................4

A.  Burroughs' Constructive Discharge Claim Should be Dismissed...................4

1.  A Claim of Constructive Discharge Allegedly Arising on November 19, 2024, Cannot Fall Within the Scope of Burroughs' July 24, 2024-EEOC Charge so She Failed to Exhaust Her Administrative Remedies as to Such a Claim ............................................5

2.  Even if Burroughs Had Administratively Exhausted Her Constructive Discharge Claim, Which is Denied, That Claim Must Be Dismissed as Burroughs Has Failed to Sufficiently Allege a Plausible Constructive Discharge Claim .................................................6

B.  Burroughs Has Not Alleged Facts Sufficient to State Any Plausible Claims ......................................................................................................8

1.  Burroughs' Hostile Work Environment Claim Should be Dismissed ......8

2.  Burroughs' FMLA Claims Should be Dismissed ..................................10

a.  Burroughs Was Not Eligible for FMLA Leave When She Requested Medical Leave in July 2024 .............................................10

b.  Burroughs' FMLA Interference Claim for Actions Allegedly Taken After October 2024 Must Also Fail ......................................10

i.  Burroughs does not sufficiently allege that she suffered from a "serious health condition" as required under the FMLA...........11

ii.  Burroughs has not sufficiently alleged that KTBS interfered with her purported rights under the FMLA after October 2024...12

c.  Burroughs' FMLA Retaliation Claim Should be Dismissed ............13

3.  Burroughs' Title VII Claims Should be Dismissed ..............................13

a.  Burroughs' Religious Discrimination Claim Must Fail Because She Fails to Allege How Her Christian Beliefs Conflicted

With Covering a Mardi Gras Parade, and KTBS Gave Her the Requested Accommodation ..............................................................13

    b.   Burroughs' Race Discrimination Claim Must Fail ...........................15

4.   Burroughs' ADA Claims Should be Dismissed .....................................17

    a.   Burroughs' Disability Discrimination Claim Should Fail ...............17

    b.   Burroughs' ADA Failure to Accommodate Claim Should Fail........20

    c.   Burroughs' ADA Retaliation Claim Also Fails...............................21

5.   Burroughs' State Law Invasion of Privacy Claim Should be Dismissed......................................................................................24

IV.    Conclusion ........................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Acker v. General Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017) ................................. 13, 19, 20, 21

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................ 16

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................. 14, 18

*Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998)....................................... 7

*Boze v. Branstetter*, 912 F.2d 801 (5th Cir. 1990).......................................................... 7

*Brown v. Bunge Corp.*, 207 F.3d 776 (5th Cir. 2000)...................................................... 7

*Bulek v. Kaiser Found. Hosps.,* No. 3:23-CV-01585, 2024 WL 1436134
    (D.Or. Apr. 3, 2024) ................................................................................................ 14

*Cagle v. Weill Cornell Med.*, 680 F.Supp.3d 428 (S.D.N.Y. 2023)................................ 14

*Caldwell v. KHOU-TV*, 850 F.3d 237 (5th Cir. 2017)..................................................... 10

*Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005)...................................... 12

*Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x 104 (5th Cir. 2009)............. 9

*Credeur v. La. through the Ofc. Of Atty. Gen'l*, 860 F.3d 785 (5th Cir. 2017)........... 8, 9

*Davis v. Dallas Ind. School Dist.*, 448 F.App'x 485 (5th Cir. 2011) ........................... 22

*Davis v. Fort Bend Cnty.*, 765 F.3d 480 (5th Cir. 2014) ............................................... 14

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015)................................ 15

*E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462 (5th Cir. 2009)............................... 20

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333 (5th Cir. 2021) ............................................. 5

*Gordon v. Acosta Sales and Marketing, Inc.*, 622 F.App'x. 426 (5th Cir. 2015) ......... 22

*Gosby v. Apache Industrial Services, Inc.*, 30 F.4th 523 (5th Cir. 2022) ..................... 18

*Green v. Brennan*, 578 U.S. 547 (2016)....................................................................... 6, 7

*Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) ........................................ 15, 16

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012) ................................ 8, 9

*Jackson v. Univ. of Tex. M.D. Anderson Cancer Center,* 54 F.App'x 404
(5th Cir. 2002) ................................................................................................ 8

*Jaubert v. Crowley Post-Signal, Inc.*, 375 So.2d 1386 (La. 1979) ............................ 24, 25

*Jennings v. Towers Watson*, 11 F.4th 335 (5th Cir. 2021) ................................. 5

*Landgraf v. USI Film Products*, 968 F.2d 427 (5th Cir. 1992),
*aff'd*, 511 U.S. 244 (1994) .......................................................................... 7

*Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298 (5th Cir. 2020) ....................... 24

*Mann v. La. High Sch. Athletic Ass'n*, 535 F.App'x. 405 (5th Cir. 2013) ..................... 18

*Mora v. Univ. of Tex. Southwestern Med. Ctr.*, 469 F.App'x. 295 (5th Cir. 2012) ........................ 18

*Muldrown v. City of St. Louis*, 601 U.S. 346 (2024) ................................. 16, 18

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ........................... 15, 16

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) ................................. 6

*Phillips v. Caris Life Scis., Inc.*, 715 F.App'x. 365 (5th Cir. 2017) ................................. 6

*Raj v. Louisiana State University*, 714 F.3d 322 (5th Cir. 2013) ................................. 16

*Reichert v. Infusion Parners, L.L.C.*, No. 2:22-CV-5450, 2023 WL 4685377
(E.D.La. Jul. 21, 2023) ................................................................................ 14

*Richardson v. KWES Television, L.L.C.*, No. 7:23-CV-113, 2024 WL 3050389
(W.D.Tex. May 22, 2024) .......................................................................... 14

*Sacks v. Texas S. Univ.*, 83 F.4th 340 (5th Cir. 2023) ................................. 5

*Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005) ................................. 8

*Slayden v. Center for Behavioral Medicine*, 53 F.4th 464 (8th Cir. 2022) ................................. 5, 6

*Smith v. City of Dallas*, No. 3:19-cv-2892, 2022 WL 3328906 (N.D.Tex. Jul. 20, 2022) .............. 6

*Stephens v. Legacy GoHealth Urgent Care*, No. 3:23-CV-206, 2023 WL 7612395
(D.Or. Oct. 23, 2024) ................................................................................ 15

*Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237 (5th Cir. 2025) ................................. 18

*Tabatchnik v. Continental Airlines*, 262 F.App'x. 674 (5th Cir. 2008) ................................. 22

*Thomas v. Burrows*, No. 2:22-CV-3511, 2023 WL 1783694
(E.D.La. Feb. 6, 2023) ...................................................................................... 21

*Thompson v. Microsoft Corp.*, 2 F.4th 460 (5th Cir. 2021) ....................................... 19, 20

*Way v. City of Missouri City*, 133 F.4th 509 (5th Cir. 2025) ........................................ 23

## **Statutes**

29 U.S.C. §2611 ........................................................................................................ 10

29 U.S.C. §2612 ......................................................................................................11, 19

29 U.S.C. §2615 ........................................................................................................ 10

42 U.S.C. §2000e ...................................................................................................... 13

42 U.S.C. §2000e-2 ........................................................................................... 13, 15, 25

42 U.S.C. §12102 ...................................................................................................... 18

42 U.S.C. §12111 ................................................................................................... 18, 19

42 U.S.C. §12112 ...................................................................................................... 17

42 U.S.C. §12203 ...................................................................................................... 21

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1

29 C.F.R. §825.210 ................................................................................................... 13

29 C.F.R. §825.220 ................................................................................................... 12

29 C.F.R. §825.311 ................................................................................................... 12

MAY IT PLEASE THE COURT:

## I.    INTRODUCTION

Plaintiff Chelsie Burroughs ("Burroughs") brings this suit against KTBS, LLC, her former employer, under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and state law. Burroughs alleges that she was discriminated against based on her alleged disability (anxiety, depression and panic disorder), race (African American) and religion (Christian), and was retaliated against while she was employed by KTBS. She also alleges that KTBS failed to accommodate her purported disability and interfered with her rights under the FMLA. Claiming that she was subjected to a hostile work environment and was constructively discharged when she resigned on November 19, 2024, Burroughs alleges that her "working conditions became so intolerable," even though she had been on "medical leave" from KTBS for the three (3) months leading up to November 19, 2024. She also alleges a state law claim of invasion of privacy based on KTBS' Human Resources ("HR") representative allegedly telling a co-worker "about [Burroughs'] EEOC charge and legal complaints."

KTBS brings this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all of Burroughs' claims with prejudice because Burroughs has failed to state claims upon which relief can be granted.

Burroughs alleges that she became employed by KTBS as a "Weekend Anchor/Reporter/MMJ [multimedia journalist]" in October 2023. She alleges that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 24, 2024 (the "EEOC Charge"). She alleges she sought "medical leave" due to "worsened symptoms" in July 2024 which she was granted in August 2024. She generally alleges she was constructively discharged on November 19, 2024, while she had been on "medical leave" for more than three

1

months. She does not associate her constructive discharge claim with any particular statute or protected characteristic. She does not allege that she ever amended the EEOC Charge or filed an additional EEOC charge thereafter. Burroughs' purported "constructive discharge" could not have been within the scope of the July 24, 2024-EEOC Charge – the only EEOC charge she alleges she filed. She could not have exhausted her administrative remedies as to any constructive discharge claim because that claim had not yet arisen when she filed her EEOC Charge more than three months *before* November 19, 2024. Therefore, Burroughs' constructive discharge claim should be dismissed.

Further, Burroughs fails to allege facts sufficient to state plausible claims of hostile work environment, interference or retaliation under the FMLA, religious or race discrimination under Title VII, or discrimination, failure to accommodate or retaliation under the ADA. She also fails to allege facts sufficient to state a plausible invasion of privacy claim under Louisiana law. Therefore, these claims should be dismissed as well.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Burroughs alleges she began working for KTBS as a "Weekend Anchor/Reporter/MMJ" in October 2023. Complaint [Doc. #1], pp. 4, 11 (¶8). She alleges that in February 2024, she pitched a story to News Director Bill Lunn to run during Black History Month which Lunn approved. *Id.*, at pp. 4, 11 (¶4). Burroughs alleges that, after Lunn approved her story, "manager Vickey Welborne began targeting [Burroughs'] work" by "subjecting [her] scripts to unusual scrutiny, rewrites and negative treatment that other anchors and reporters did not receive." *Id.*, at pp. 4, 11 (¶10). Burroughs also alleges that in February 2024, she was assigned to cover a Mardi Gras parade. *Id.*, at p. 5. She states that she told KTBS management that covering a Mardi Gras parade conflicted with her "sincerely held Christian beliefs." *Id.* KTBS removed her from the assignment as requested. *See id.* Burroughs alleges that the week after KTBS granted her request not to cover a

Mardi Gras parade based on her Christian beliefs, Lunn asked her about her religious beliefs "and tried to convince [her] that participating in Mardi Gras was not wrong." *Id.*

Burroughs alleges that on March 4, 2024, she filed a grievance with HR against Vickey Welborne "for harassment and discriminatory treatment." *Id.* According to Burroughs, Lunn sent a written response to her grievance, with a copy to upper management and her talent agent, that Burroughs was "sensitive to critiques" and that her work would be under "more scrutiny." *Id.* Burroughs states that, in March 2024, she had a follow-up meeting with Lunn, Corey Dixon (KTBS's HR Representative) and George Sirven (KTBS' General Manager). *Id.*, at pp 5, 11 (¶¶3, 5). Burroughs claims that at some undisclosed time after this meeting, she had four hours deducted from her paycheck. *See id.*, at p. 5.

Burroughs claims that throughout the spring of 2024, she "repeatedly requested reasonable accommodations for [her] diagnosed anxiety and panic disorder." *Id.* She alleges that she requested a "consistent schedule and transfer to an evening shift," which she claims were accommodations recommended by her purported physician. Burroughs claims that in response to her request, she was told she could stay on her then-current schedule or be a "reporter only," one of the jobs she was hired to perform. *Id.*

Burroughs alleges that in July 2024, her "symptoms worsened" so she requested "medical leave" which she was granted from August to November 2024. *Id.*, at pp. 6, 11 (¶18). After she left on leave, Burroughs never returned to work at KTBS. Burroughs claims that while on medical leave KTBS' "HR Representative," Dixon, "repeatedly contacted [Burroughs] by text and email about work and insurance, told [her she] was responsible for premiums" that Burroughs claims "should have been handled by the plan," and required Burroughs to check in weekly to advise KTBS of whether her medical condition had changed. *Id.*, at p. 6.

3

Burroughs alleges she filed an EEOC Charge against KTBS on July 24, 2024. *Id.*, at p. 7. She alleges that in August 2024, Dixon disclosed information to a co-employee at KTBS ("C.C.") "about [Burroughs'] EEOC charge and legal complaints." *Id.*, at p. 6. According to Burroughs, "C.C." spread information about Burroughs' EEOC Charge and legal complaints "around the newsroom." *Id.*

Burroughs claims that, even though she had been on medical leave from KTBS for more than three months since August 2024, "[t]he working conditions [at KTBS] became so intolerable that on November 19, 2024" she gave KTBS written notice that she believed she had been constructively discharged from her employment with KTBS. *Id.*, at p. 6.

Burroughs alleges that she received a Notice of Right to Sue from the EEOC dated September 5, 2024.

Burroughs has now filed a Complaint against KTBS generally alleging she was constructively discharged when she resigned while having been on "medical leave" for more than three months and subjected to a hostile work environment. She also alleges claims of interference and retaliation under the FMLA, religious and race discrimination under Title VII and disability discrimination, failure to accommodate and retaliation under the ADA. Finally, she alleges a state law claim of invasion of privacy. KTBS timely files this motion to dismiss all of Burroughs' claims with prejudice.

## III.    LAW AND ARGUMENT

### A.  Burroughs' Constructive Discharge Claim Should be Dismissed.

Burroughs alleges that she was constructively discharged from KTBS on November 19, 2024, while she was on three months' medical leave from KTBS, because "[t]he working conditions [at KTBS] became so intolerable" she had to resign. Complaint [Doc. #1], p. 6. Burroughs has brought claims against KTBS under Title VII and the ADA and asserts retaliation.

4

She does not specify the statute or protected characteristic with which she associates her constructive discharge claim.

Regardless of whether Burroughs relies on constructive discharge to support her claims under Title VII or the ADA, her "constructive discharge" claim could not have arisen prior to November 19, 2024; accordingly, this claim should be dismissed as it could not fall within the scope of Burroughs' July 24, 2024-EEOC Charge. Alternatively, the Court should dismiss this claim because Burroughs has failed to allege facts sufficient to state a plausible constructive discharge claim.

     1.   <u>A Claim of Constructive Discharge Allegedly Arising on November 19, 2024, Cannot Fall Within the Scope of Burroughs' July 24, 2024-EEOC Charge so She Failed to Exhaust Her Administrative Remedies as to Such a Claim.</u>

Burroughs filed her EEOC Charge against KTBS on July 24, 2024. She does not claim she was constructively discharged until November 19, 2024 – almost four months later. Complaint [Doc. #1], p. 7. Burroughs could not bring a constructive discharge claim until she resigned in November 2024. Simply put, her claim did not exist until well after July 24, 2024, so she could not have raised such a claim in her July 24, 2024-EEOC Charge. *See Sacks v. Texas S. Univ.*, 83 F.4th 340, 345 (5th Cir. 2023); *see also Slayden v. Center for Behavioral Medicine*, 53 F.4th 464, 469 (8th Cir. 2022).

Title VII and the ADA require employees to exhaust their administrative remedies by filing a charge of discrimination with the EEOC and receiving a statutory notice of right to sue before filing suit in federal court. *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021).To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). Courts consider not only the scope of the administrative charge itself, but also the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *See Jennings*, 11 F.4th at 342.

5

Constructive discharge is a discrete event for which a plaintiff must amend or supplement her EEOC charge. *See Phillips v. Caris Life Scis., Inc.*, 715 F.App'x. 365, 369 (5th Cir. 2017). A plaintiff's constructive discharge claim is not reasonably related to EEOC charge allegations where the alleged constructive discharge does not occur until months after the plaintiff's charge has been filed. *See Smith v. City of Dallas*, 3:19-cv-2892, 2022 WL 3328906, at *2 (N.D.Tex. Jul. 20, 2022); *see also Slayden*, 53 F.4th at 469.

In this case, the Court need not construe the July 24, 2024-EEOC Charge to determine if Burroughs' constructive discharge claim could reasonably be expected to grow out of her charge of discrimination. Burroughs' alleged constructive discharge had not yet happened when she filed her EEOC Charge. In other words, Burroughs could not have alleged she was constructively discharged on July 24, 2024, when she did not resign from KTBS until November 19, 2024, almost four months later.

Burroughs failed to exhaust her administrative remedies as to any constructive discharge claim as it was not raised in an EEOC Charge before filing suit against KTBS. Thus, Burroughs' constructive discharge claim should be dismissed.

    2.  <u>Even if Burroughs Had Administratively Exhausted Her Constructive Discharge Claim, Which is Denied, That Claim Must Be Dismissed as Burroughs Has Failed to Sufficiently Allege a Plausible Constructive Discharge Claim.</u>

Constructive discharge occurs when "an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016), quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). When the employee resigns under those circumstances, courts treat that resignation as tantamount to an actual discharge. *See Green,* 578 U.S. at 555. A plaintiff claiming constructive discharge must prove that (1) he was discriminated against by his employer to the point where a reasonable person

6

in his position would have felt compelled to resign; and (2) he actually resigned. *Id.* "In other words, an employee cannot bring a constructive-discharge claim until he is constructively discharged." *Id.*

To determine whether a reasonable employee would feel compelled to resign, courts have considered the following events: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] ..." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alteration in original) (citations omitted). Constructive discharge requires a greater degree of harassment than that required by a hostile work environment claim. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge. *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990); *Landgraf v. USI Film Products*, 968 F.2d 427, 429–30 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994).

Burroughs does not allege specific facts stating the grounds for her constructive discharge claim but, rather, alleges in a conclusory manner that KTBS "failed to stop the harassment, failed to accommodate her disabilities and continued to retaliate against [her]." Complaint [Doc. #1], p. 6. She does not allege facts describing how the working conditions became "intolerable" when she was not at work and was on "medical leave." The actions Burroughs alleges a KTBS employee, Dixon, took while Burroughs was out on medical leave were "repeatedly contact[ing her] by text and email about work and insurance, t[elling her she] was responsible for paying premiums that should have been handled through the plan, and require[ing] weekly check-ins where [she] had to report whether [her] medical condition had changed." *Id.* Burroughs also alleges that in August

2024, Dixon disclosed information "about [Burroughs'] EEOC charge and legal complaints to coworker C.C. who then spread this information around the newsroom." *Id.*

"The Fifth Circuit has set the bar very high for plaintiffs seeking to establish a constructive discharge." *Jackson v. Univ. of Tex. M.D. Anderson Cancer Center,* 54 F.App'x 404, at *4 (5th Cir. 2002). Burroughs does not plausibly allege that her working conditions were so intolerable that a reasonable person would feel compelled to resign. Even if Burroughs' limited factual allegations are accepted as true and viewed in the light most favorable to her, the alleged conduct simply does not rise to the level required for a constructive discharge claim in the Fifth Circuit. Therefore, her constructive discharge claim should be dismissed.

**B. Burroughs Has Not Alleged Facts Sufficient to State Any Plausible Claims.**

1. Burroughs' Hostile Work Environment Claim Should be Dismissed.

To establish a claim for a hostile work environment, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her disability and/or race and/or religion; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Credeur v. La. through the Ofc. Of Atty. Gen'l*, 860 F.3d 785, 795-96 (5th Cir. 2017) (ADA); *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (Title VII).

The harassing conduct must create an objectively and subjectively hostile environment, taking into account the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotations omitted). "[A] subjective belief of racial motivation, without more, is insufficient to

8

show a hostile work environment." *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x 104, 107 (5th Cir. 2009). The "harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Credeur*, 860 F.3d at 796 (ADA); *Hernandez*, 670 F.3d at 652 (Title VII).

Burroughs alleges that on March 4, 2024, she "filed a grievance with [HR] against Vickey Welborne for harassment and discriminatory treatment." Complaint [Doc. #1], p. 5. She also alleges in a conclusory fashion that "[d]espite [her] repeated complaints and medical documentation, KTBS management failed to stop the harassment . . .." *Id.*, at p. 6. Burroughs fails to allege that any purported "harassment" was based on her membership in any claimed protected class, or what conduct, if any, she claims constituted "harassment." She also alleges that Dixon "disclosed confidential information about [her] EEOC charge and legal complaints to coworker C.C., who then spread this information around the newsroom." Burrough claims that "[t]his breach of confidentiality and resulting gossip caused humiliation, damaged [her] reputation, and worsened the hostile work environment." *Id.*, at p. 6. Burrough fails to allege any specific, nonconclusory facts regarding what conduct, if any, she claims created, much less "worsened," the purported "hostile work environment."

Burroughs' allegations that her work was subject to "increased scrutiny," or a derivative thereof, are also conclusory. They do not include facts sufficient to support the essential element that the harassment be "sufficiently severe or pervasive," to state a claim of hostile work environment under the ADA or Title VII. *See Credeur*, 860 F.3d at 796 (ADA); *Hernandez, Inc.*, 670 F.3d at 652 (Title VII).

Burroughs generally alleges a "hostile work environment" claim, Complaint [Doc. #1], p. 12 (¶41), but fails to specify the statute or protected characteristic upon which she bases this claim. She fails to allege any facts to support such a claim. Regardless of whether her claim is under Title

9

VII or the ADA, Burroughs has failed to state a claim for hostile work environment, and that claim should be dismissed.

      2.  <u>Burroughs' FMLA Claims Should be Dismissed</u>.

         *a.*  *Burroughs Was Not Eligible for FMLA Leave When She Requested Medical Leave in July 2024.*

To be eligible for leave under the FMLA, an employee must have been employed by a covered employer for at least 12 months (which need not be consecutive) and must have worked at least 1,250 hours during the 12 months before the first day of the requested leave. *See* 29 U.S.C. §2611(A).  Burroughs began her employment with KTBS in October 2023. Complaint [Doc. #1], pp. 4, 11 (¶8). Burroughs alleges that she sought medical leave in July 2024. *Id.*, at p. 6. When Burroughs requested "medical leave," she had only worked for KTBS for approximately ten (10) months. Based on the eligibility requirements of 29 U.S.C. §2611(A), Burroughs could not become eligible for FMLA leave until approximately October 2024.

Plaintiff was not an employee eligible for FMLA benefits until approximately October 2024. Therefore, any FMLA-based claims Burroughs purports to assert regarding actions allegedly taken by KTBS before October 2024 must be dismissed.

         *b.*  *Burroughs' FMLA Interference Claim for Actions Allegedly Taken After October 2024 Must Also Fail.*

"It [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. 29 U.S.C. §2615(a)(1).  To establish a *prima facie* interference claim under the FMLA, a plaintiff must allege that: (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the benefits to which she was entitled under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Burroughs fails to include allegations to show that in October 2024, when she had been employed by KTBS for the requisite 12 month-period under the FMLA, she was an eligible employee under the FMLA, that KTBS was subject to FMLA requirements, that she was entitled to FMLA leave, that she gave proper notice of her intention to take FMLA leave or that KTBS denied her benefits to which she was entitled under the FMLA. Even assuming solely for purposes of this motion that Burroughs had properly alleged facts sufficient to show that she was an FMLA-eligible employee as of October 2024 (*i.e.*, had been employed by KTBS for 12 months and worked at least 1,250 hours during that 12 month-period before the first day of the requested period, and that KTBS was subject to FMLA requirements), Burroughs has failed to allege facts sufficient to state a plausible FMLA interference claim.

i.  <u>Burroughs does not sufficiently allege that she suffered from a "serious health condition" as required under the FMLA.</u>

FMLA leave is authorized for an employee's own serious health condition if the condition makes the employee unable to perform the essential functions of her job. 29 U.S.C. §2612(a)(1)(D). To satisfy the threshold burden for coverage under the FMLA, a plaintiff must allege facts sufficient to show that she suffered from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D).

In her Complaint, Burroughs appears to imply that she was entitled to FMLA leave based on a personal purported "serious health condition," *see* 29 U.S.C. §2612(a)(1)(D): "In July 2024 my symptoms worsened and I requested medical leave supported by doctor's notes. I was placed on leave beginning in August 2024." Complaint [Doc. #1], p. 6. The only medical conditions Burroughs references in her Complaint are anxiety, depression and a panic disorder. *Id.*, at pp. 5-6, 8. Burroughs has merely alleged that she was previously diagnosed with anxiety and panic disorder and that her undisclosed symptoms worsened. She alleges anxiety and depression are her

11

disability. These allegations are not sufficient to state facts to show Burroughs suffered from a serious health condition. Thus, plaintiff's FMLA interference claims should be dismissed.

> ii. Burroughs has not sufficiently alleged that KTBS interfered with her purported rights under the FMLA after October 2024.

The FMLA does not define "interference," but Department of Labor regulations provide that interference includes refusing to authorize FMLA leave, restraining or discouraging FMLA leave, and retaliating against employees who exercise FMLA rights. 29 C.F.R. §825.220. Burroughs has not alleged facts sufficient to show that KTBS interfered with any rights Burroughs purportedly had under the FMLA between October 2024[1] and her resignation on November 19, 2024.

Burroughs alleges that during her medical leave, HR representative Dixon "repeatedly contacted [her] by text and email about work and insurance, told [Burroughs she] was responsible for paying premiums that should have been handled through the plan, and required mandatory weekly check-ins where [plaintiff] had to report whether [her] medical condition had changed." Complaint [Doc. #1], p. 6. Even if Burroughs was entitled to FMLA leave between October 2024 and November 19, 2024, which is denied, "[a]n employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." 29 C.F.R. §825.311(a). "[T]here is no right in the FMLA to be 'left alone.'" *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005). Thus, plaintiff's allegations that KTBS' HR Representative contacted Burroughs while she was on leave about work and asked her to provide weekly updates about the status of her medical condition are not sufficient to state an FMLA interference claim.

Reminding an employee on leave about paying insurance premiums is also acceptable. An employee on FMLA leave must continue to pay any group health plan premium that she was paying

---

[2] October 2024 is the month in which Burroughs had been employed by KTBS for the requisite 12 months under the FMLA.

before taking FMLA leave. *See* 29 C.F.R. §825.210(a) – (c). Thus, plaintiff's conclusory allegations that Dixon emailed and texted Burroughs about insurance and told her she was responsible for paying premiums are not sufficient to state an FMLA interference claim either.

c. <em>Burroughs' FMLA Retaliation Claim Should be Dismissed.</em>

To prove FMLA retaliation, a plaintiff must show that she: (1) was protected under the FMLA; (2) suffered an adverse employment action; and (3) was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017). Burroughs does not allege any facts particular to her FMLA retaliation claim, *see* Complaint [Doc. #1], p. 12 (¶38), but does allege that she was "constructively discharged" when she resigned on November 19, 2024, while on purported FMLA leave, *see id.*, at p. 6.

For the reasons stated in Section III.B.2.b.i., *supra.*, Burroughs has failed to allege facts to plausibly state she was protected under the FMLA. For the reasons stated in Section III.A.2., *supra.*, Burroughs has failed to allege facts sufficient to state a claim for constructive discharge, thereby failing to show she suffered an adverse employment action. Therefore, Burroughs' FMLA retaliation claim should be dismissed.

3.  <u>Burroughs' Title VII Claims Should be Dismissed.</u>

a. <em>Burroughs' Religious Discrimination Claim Must Fail Because She Fails to Allege How Her Christian Beliefs Conflicted With Covering a Mardi Gras Parade, and KTBS Gave Her the Requested Accommodation.</em>

Title VII prohibits an employer from discriminating against an employee based on her religion. 42 U.S.C. §§2000e-2(a)(1), 2000e(j). To establish a *prima facie* case of religious discrimination under Title VII, a plaintiff must allege facts sufficient to show that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing

13

to comply with the conflicting employment requirement. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014).

Burroughs alleges that in February 2024, she was assigned to cover a Mardi Gras parade. She alleges that she "informed management" that this assignment "conflicted with [her] sincerely held Christian beliefs." Complaint, [Doc. #1], p. 5. She concedes that "the assignment was removed." *Id*. Burroughs does not allege any non-conclusory facts about her religious beliefs or how her "Christian beliefs" would conflict with reporting on a Mardi Gras parade. Merely stating that her Christian beliefs conflicted with covering the parade is conclusory. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"[T]he Court need not delve into the sincerity or reasonableness of [Burroughs'] belief here – because it cannot – [Burroughs] has pled no facts as to [her] religious beliefs in [her] Complaint." *See Richardson v. KWES Television, L.L.C.*, No. 7:23-CV-113, 2024 WL 3050389, at *3 (W.D. Tex. May 22, 2024). She has only stated that her beliefs are "Christian." District courts across the United States have granted motions to dismiss for failure to state a claim when, as in this case, the plaintiff has failed to allege a conflict between her beliefs and the employment requirement which would necessarily require some description of the plaintiff's particular beliefs. *See id.*; *see also Reichert v. Infusion Parners, L.L.C.*, No. 2:22-CV-5450, 2023 WL 4685377, at *4 (E.D.La. July 21, 2023) (summarily stating that the COVID-19 vaccine violated the plaintiff's religious beliefs without any allegations as to what those beliefs are is not sufficient to allege facts regarding an essential element of her claim, *i.e.* her sincerely held religious beliefs).[2] Bald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are not sufficient to state a claim for religious discrimination under Title VII. *Cagle v.*

---

[2] *See also Bulek v. Kaiser Found. Hosps.,* No. 3:23-CV-01585, 2024 WL 1436134, at *3 (D.Or. Apr. 3, 2024) (plaintiffs must say what the conflict is between their religious beliefs and their employer's vaccine mandate).

14

*Weill Cornell Med.*, 680 F.Supp.3d 428, 435-36 (S.D.N.Y. 2023). General references to Christianity such as that made by Burroughs have been found not to meet "even a 'fairly minimal' burden at the pleading stage. *See Stephens v. Legacy GoHealth Urgent Care*, No. 3:23-CV-206, 2023 WL 7612395, at *7-9 (D.Or. Oct. 23, 2024).

Further, Burroughs has not alleged she suffered an adverse employment action. A plaintiff fails to show an adverse action "because of" the religious practice when the employer is willing to accommodate the employee. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n. 2 (2015). Burroughs alleges that she asked not to cover a Mardi Gras parade, claiming that it conflicted with her Christian beliefs. She was given her requested accommodation.

Burroughs further alleges that Lunn questioned her religious beliefs and "tried to convince [her] that participating in Mardi Gras was not wrong." Complaint [Doc. #1], p. 5. She alleges that she believed the conversation with Lunn was "coercive and discriminatory." *Id.* Burroughs' allegations that her conversation with Lunn was "coercive and discriminatory" are mere conclusions, not statements of fact. These conclusory allegations are not sufficient to allege an adverse employment action.

Burroughs has not alleged facts sufficient to show a plausible claim for religious discrimination. Therefore, her religious discrimination claim should be dismissed.

### b.   *Burroughs' Race Discrimination Claim Must Fail.*

Title VII prohibits employers from discriminating against any individual with respect to compensation, terms, conditions or privileges of employment because of the individual's race. 42 U.S.C. §2000e-2(a)(1). To plead a disparate-treatment claim under Title VII, a plaintiff must allege facts plausibly showing (1) an adverse employment action, (2) taken against a plaintiff because of her protected status. *Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023). Title VII is not a general civility code for the American workplace. *See Oncale v. Sundowner Offshore Servs., Inc.*,

15

523 U.S. 75, 80 (1998). Title VII "does not permit liability for *de minimis* workplace trifles." *See Hamilton*, 79 F.4th at 505 (citations omitted). Further, a plaintiff must allege facts—either direct or circumstantial—that would suggest that defendant's actions were based on the plaintiff's protected status or that defendant treated similarly situated employees outside of her protected class more favorably. *Raj v. Louisiana State University*, 714 F.3d 322, 331 (5th Cir. 2013).

Burroughs' race discrimination claim appears to be based on (1) "discriminatory treatment following a Black History Month story pitch," (2) Manager Vicky Welborne's "increased scrutiny not imposed on white reporters," (3) "racial microaggressions," and (4) allegedly being labeled "difficult" and "overly sensitive." Complaint [Doc. #1], p. 11 (¶¶ 9-11). To make out a Title VII discrimination claim, an employee must show "some harm respecting an identifiable term or condition of employment." *Muldrown v. City of St. Louis*, 601 U.S. 346, 354-55 (2024).

The phrases and words "discriminatory treatment," "increased scrutiny" and "racial microaggressions" are all impermissibly vague and do not satisfy Burroughs' initial pleading requirement regarding the ultimate element of an adverse employment action taken because of her race. Burroughs makes no factual allegations regarding what she considers to be "increased scrutiny." She alleges no facts to support the conclusory statements that she was subject to "discriminatory treatment" or "racial microaggressions." Burroughs also alleges no facts to even suggest that any alleged "adverse employment action" was taken based on her race.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a claim's facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Burroughs' Complaint includes no factual allegations to support a facially plausible race discrimination claim under Title VII. Therefore, that claim should be dismissed.

16

4.   <u>Burroughs' ADA Claims Should be Dismissed.</u>

a.   *Burroughs' Disability Discrimination Claim Should Fail.*

Burroughs alleges that, at some undisclosed point in time, she was diagnosed with anxiety and a panic disorder. Complaint [Doc. #1], p. 5. She further alleges that "[t]hroughout spring 2024", she "repeatedly requested" accommodations for her anxiety and panic disorder which accommodations included a "consistent schedule" and "transfer to an evening shift." *Id.* Burroughs alleges that "Management" refused to give her the requested accommodations and "instead told [her] she could either remain on [her] stressful schedule or accept a demotion to reporter only." *Id.*

Burroughs further alleges that her "symptoms," presumably related to her alleged anxiety and panic disorder, worsened in July 2024 and that she requested "medical leave" which she was granted starting in August 2024. *Id.*, at p. 6. Burroughs does not couch this request for "medical leave" in terms of a request for an accommodation. *Id.* However, KTBS will consider it such a request solely for purposes of this motion. Burroughs alleges that during her "medical leave," her HR Director, Dixon, "repeatedly contacted [Burroughs] by text and email about work and insurance, told [her she] was responsible for paying premiums that should have been handled through the plan, and required mandatory weekly check-ins where [she] had to report whether [her] medical condition had changed." *Id.*, at p. 6. Burroughs further alleges that, while she was on medical leave, she resigned on November 19, 2024, claiming she was constructively discharged.

Title I of the ADA prohibits discrimination against a qualified individual with a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" because of that disability. 42 U.S.C. §12112(a). A "qualified individual" under the ADA is "an

17

individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8).

With an ADA discrimination claim, a plaintiff must prove that she (1) is disabled within the meaning of the ADA, (2) was qualified for the job, and (3) was subject to an adverse employment decision because of her disability. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 248 (5th Cir. 2025); *see also Gosby v. Apache Industrial Services, Inc.*, 30 F.4th 523, 525–26 (5th Cir. 2022). To show an adverse employment action, an employee must show "some harm respecting an identifiable term or condition of employment." *Muldrown*, 601 U.S. at 354-55 (2024). A plaintiff must plead "not only an adverse action, but something more than a *de minimis* harm borne of that action." *Strife*, 138 F.4th at 249 (internal citations and quotations omitted). Burroughs fails to plead any facts to support any of the elements of her ADA claim.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(1). Burroughs merely alleges that she sought "accommodations for [her] diagnosed anxiety and panic disorder," and that her "symptoms worsened." Complaint [Doc. #1], pp. 5-6. Allegations that the plaintiff had been diagnosed with anxiety and panic disorders are not sufficient to plead a "disability" and state a valid claim under the ADA. *See Mann v. La. High Sch. Athletic Ass'n*, 535 F.App'x. 405, 411-412 (5th Cir. 2013) (plaintiff's diagnosis of anxiety disorder was insufficient, standing alone, to support finding that he was likely to succeed in proving he was disabled under the ADA); *see also Mora v. Univ. of Tex. Southwestern Med. Ctr.*, 469 F.App'x. 295, 297 (5th Cir. 2012). A valid complaint must do more than give "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555. Burroughs has not even made that recitation. Accordingly, Burroughs' ADA claims should be dismissed.

Burroughs seems to rely on Dixon's communications with Burroughs while she was on "medical leave" from August to November 2024 as the basis for her ADA disability discrimination claim, as opposed to her ADA failure to accommodate claim which she appears to allege arose out of her request for an accommodation "[t]hroughout spring 2024." *See* Complaint [Doc. #1], pp. 5-6. To the extent that Burroughs' disability discrimination claims arise out of events that fall within the scope of her EEOC Charge, which is denied, those claims must be dismissed because she has not plausibly alleged that she was a qualified individual under the ADA.

In fact, Burroughs' allegations that she had rights under the FMLA when she was on "medical leave" completely contradict any claim that she was a qualified individual under the ADA, *i.e.*, could perform the essential functions of her job with or without an accommodation, which is not alleged anywhere in her Complaint. *See* Complaint [Doc. #1], p. 6. The Fifth Circuit has explained that a request for FMLA leave is not a request for a reasonable accommodation under the ADA. *Acker*, 853 F.3d at 791.

> An employee who requests FMLA leave asserts he has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D) ("Entitlement to leave"). A request for a reasonable accommodation under the ADA is a claim that the employee "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8) ("Definitions: Qualified Individual"). . . . Thus, an employee seeking FMLA leave is by nature arguing that he cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he can perform the essential functions of the job.

*Acker*, at 791-92.

A plaintiff can show she is qualified by showing that either (1) she could perform the essential functions of the job in spite of her disability, or (2) that a reasonable accommodation of her disability would have enabled her to perform essential functions of the job. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021). Burroughs' Complaint includes no factual allegations regarding how she could perform the essential functions of her job as a Weekend

19

Anchor/Reporter/MMJ for KTBS while she was on medical leave. If, as Burroughs alleges, she was seeking FMLA leave in July 2024, then by nature, Burroughs was arguing that she could not perform the functions of her job. *See Acker*, 853 F.3d at 792.

Further, Burroughs has failed to allege that she was subjected to an adverse employment action. As explained in Section III.A., *supra.*, plaintiff failed to exhaust her administrative remedies as to any claim for constructive discharge so she cannot rely on her November 2024-resignation as the adverse employment action for her ADA discrimination claim. Allegations regarding Dixon's contact with Burroughs while she was on leave are not sufficient to show an adverse employment action.

For these reasons, Burroughs' ADA discrimination claim should be dismissed.

b.   *Burroughs' ADA Failure to Accommodate Claim Should Fail.*

To establish an ADA failure-to-accommodate claim, a plaintiff must prove that (1) she was a qualified individual with a disability; (2) her employer knew about her disability and its consequential limitations; and (3) her employer failed to make reasonable accommodations for such known limitations. *Thompson*, 2 F.4th at 467 (citations omitted). The right to accommodation under the ADA affords only reasonable accommodation, not the employee's preferred accommodation. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citations omitted).

Burroughs alleges that "throughout spring 2024," she requested "accommodations for [her] diagnosed anxiety and panic disorder, including a consistent schedule and transfer to an evening shift as recommended by [her] physician." Complaint [Doc. #1], p. 5. She makes the conclusory allegation that in response to these requests, she was told that she "could either remain on [her] stressful schedule or accept a demotion to reporter only." *Id.*

20

As explained in Section III.B.4.a. above, Burroughs has alleged only that she was diagnosed with certain conditions, *i.e.*, anxiety and panic disorders, and has not set forth any facts to support a plausible claim that she is a qualified individual with a disability. Therefore, Burroughs fails to state an ADA discrimination or failure to accommodate claim. *See Thomas v. Burrows*, No. 2:22-CV-3511, 2023 WL 1783694, at *6 (E.D.La. Feb. 6, 2023).

Burroughs does not allege that she could perform the essential functions of her job as a "Weekend Anchor/Reporter/MMJ" with the requested accommodation. She does not allege how the accommodations requested would have enabled her to perform essential functions of her job. She does not allege that her employer knew about the consequential limitations of her alleged disability.

Any claim that Burroughs purports to assert that she was not accommodated when she asked for medical leave in July 2024 should be dismissed because she was given the requested leave. *See* Complaint [Doc. #1], p. 6. Further, if, as Burroughs alleges, she was entitled to FMLA leave while out on "medical leave," then this would constitute an admission that Burroughs had a "serious health condition" under the FMLA. *See Acker*, 853 F.3d at 791-92. Accordingly, she could not have been able to perform the essential functions of her job as required to be a qualified individual under the ADA.

Put simply, Burroughs has failed to state a plausible claim of failure-to-accommodate under the ADA, and that claim should be dismissed.

c.   *Burroughs' ADA Retaliation Claim Also Fails*.

The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. §12203(a). To establish an ADA retaliation claim, a plaintiff must

21

show (1) that she engaged in an activity protected by the ADA, (2) that she was subjected to an adverse employment action, and (3) a causal connection between the protected act and the adverse action. *Strife*, 138 F.4th at 249 (5th Cir. 2025).

Burroughs vaguely alleges under the title, "ADA – Failure to Accommodate & Retaliation," that she "engaged in protected activity" and "[r]etaliation followed." Complaint [Doc. #1], p. 11 (¶¶26 and 27). She does not allege what she claims to be the "protected activity" under the ADA. Burroughs alleges that: (1) on March 4, 2024, she "filed a grievance with Human Resources against Vickey Welborne for harassment and discriminatory treatment"; (2) she requested an accommodation "[t]hroughout spring 2024" for her "diagnosed anxiety and panic disorder"; (3) in July 2024, she requested "medical leave" due to her alleged unidentified "worsened" symptoms; and (4) she filed an EEOC Charge on July 24, 2024. *Id.*, at p. 7.

A complaint to an employer about harassment that is unconnected to the plaintiff's disability is not a protected activity. *Gordon v. Acosta Sales and Marketing, Inc.*, 622 F.App'x. 426, 431 (5th Cir. 2015); *see also Davis v. Dallas Ind. School Dist.*, 448 F.App'x 485, 493 (5th Cir. 2011) ("a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity"). Burroughs' allegations are not sufficient to show that the March 4, 2024-grievance is a protected activity under the ADA or that her EEOC Charge included any complaints about an unlawful employment practice under the ADA.

Assuming solely for purposes of this motion that plaintiff had a good faith belief that she was disabled under the ADA, which is denied, Burroughs' Spring 2024 request for an accommodation and possibly the July 2024 request for "medical leave" might be considered "protected activity" under the ADA. Complaint [Doc. #1], pp. 5, 6; *see Tabatchnik v. Continental Airlines*, 262 F.App'x. 674, 676 (5th Cir. 2008). However, Burroughs has not sufficiently alleged a causal link between each of those requests and any purported adverse employment action.

22

Burroughs alleges that in response to her Spring 2024 request for an accommodation she was told she "could either remain on [her] stressful schedule or accept a demotion to reporter only." Complaint [Doc. #1], p. 5. In other words, according to Burroughs, KTBS told her that she could either maintain the status quo or work as a reporter, which as she alleges, was one of the jobs for which she was hired. *See* Complaint [Doc. #1], pp. 4, 11 (¶1). Her allegations are conclusory and not sufficient to state an adverse employment action. KTBS hired plaintiff, in part, to be a reporter, which is what she alleges KTBS told her she could do.

Even if Burroughs' request for "medical leave" in July 2024 could be deemed a protected activity under the ADA, she has not alleged any adverse employment action being causally linked to that request. The only things that Burroughs alleged occurred after she was granted the requested medical leave starting in August 2024 was Dixon's contact "about work and insurance" and paying Burroughs' insurance premiums, "mandatory weekly check-ins" to provide a status update on her medical condition, Dixon's alleged disclosure of Burroughs' EEOC Charge and Burroughs' purported constructive discharge on November 19, 2024. Complaint [Doc. #1], p. 6.

As explained above in §III.B.2.b., *supra.*, Burroughs has not sufficiently alleged how Dixon's communications with her while she was on "medical leave" could constitute an "adverse employment action." Burroughs also cannot rely on the purported constructive discharge on November 19, 2024, as an adverse employment action taken in retaliation for her Spring 2024-request for an accommodation, July 2024-request for medical leave and/or July 24, 2024-EEOC Charge. Plaintiff failed to exhaust her administrative remedies as to any constructive discharge claim or, alternatively, failed to sufficiently allege such a claim. *See* Section III.A.1., *supra.*

A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him. *Way v. City of Missouri City*, 133 F.4th 509, 522 (5th Cir. 2025) (citations omitted). To satisfy this third element

23

with temporal proximity alone requires the timing to be "very close." *Id.*, quoting *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (*e.g.*, a six-and-a-half-week timeframe is sufficiently close, but a five-month lapse is not close enough, without other evidence of retaliation, to establish the "causal connection" element). Even if this Court allows Burroughs to rely on the alleged constructive discharge as the purported adverse employment action, which it should not, Burroughs' November 19, 2024-resignation is too remote in time from her request for accommodation months earlier in the Spring of 2024 to be causally connected.

Burroughs has not sufficiently stated a claim for retaliation under the ADA, and that claim should be dismissed.

> 5.   Burroughs' State Law Invasion of Privacy Claim Should be Dismissed.

Burroughs lists one of her "Legal Claims & Counts" as "Invasion of Privacy/Breach of Confidentiality." Complaint [Doc. #1], p. 12 (¶42). Presumably in connection with that claim, she alleges the following:

> In August 2024 {*sic*} Corey Dixon disclosed confidential information about my EEOC charge and legal complaints to coworker C.C., who then spread this information around the newsroom. This breach of confidentiality and resulting gossip caused humiliation, damaged my reputation, and worsened the hostile work environment.

*Id.*, at p. 6. Burroughs does not identify any federal or state statute or agreement upon which she bases such claim. As the undersigned is not aware of any federal statute creating such a cause of action against a private employer under the circumstances alleged in Burroughs' Complaint, KTBS will assume for purposes of this motion that Burroughs asserts such a claim under Louisiana law.

One of the four categories of the invasion of privacy tort recognized in Louisiana upon which Burroughs might be basing her claim is the unreasonable public disclosure of embarrassing private facts. *Jaubert v. Crowley Post-Signal, Inc.*, 375 So.2d 1386, 1388 (La. 1979). "An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and

24

seriously interferes with the plaintiff's privacy interest." *Id.*, at 1389. "[T]he reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct." *Id.*

The only information Burroughs alleges Dixon disclosed is "confidential information about [Burroughs'] EEOC charge and legal complaints." Complaint [Doc. #1], p. 6. She does not allege any facts stating what "confidential information" or "legal complaints" she claims were disclosed. Under 42 U.S.C. §2000e-8(e), the EEOC is prohibited from making a complainant's charges public before litigation, not the employer. An employer is not statutorily barred by Title VII or the ADA from disclosing the fact that an employee filed a charge with the EEOC.

Burroughs has not alleged facts sufficient to state a plausible invasion of privacy claim. Therefore, that claim should be dismissed as well.

## IV.    CONCLUSION

For the reasons stated herein, Burroughs failed to exhaust her administrative remedies regarding any claim of constructive discharge which she alleges occurred when she resigned on November 19, 2024, when her EEOC Charge was filed on July 24, 2024, months before Burroughs resigned. Regardless, Burroughs fails to allege facts sufficient to state plausible claims for constructive discharge (whether under the ADA or Title VII), hostile work environment (whether under the ADA or Title VII), the FMLA, Title VII, the ADA and Louisiana law. Therefore, KTBS's Motion to Dismiss should be granted, and Burroughs' claims against KTBS should be dismissed with prejudice.

25

Respectfully Submitted,

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By:  /s/ *Elizabeth M. Carmody*
      Elizabeth Mendell Carmody, #25792
      Luke D. Whetstone, #37355

333 Texas Street, Suite 1700
P. O. Box 22260
Shreveport, LA 71120-2260
Telephone: (318) 221-6277
Telecopier: (318) 227-7850
elizabeth.carmody@cookyancey.com
luke.whetstone@cookyancey.com

ATTORNEYS FOR KTBS, LLC

## CERTIFICATE

I HEREBY CERTIFY that on the 2nd  day of February, 2026, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, with notice to be sent by operation of the court's electronic filing system to all counsel of record, and with a copy sent to Plaintiff Chelsie Burroughs, via her email address at Chelsieburroughs83@gmail.com, and via certified US mail, return receipt requested 9589 0710 5270 2956 1450 16, at 9584 Eden Road, Apt. 1318, Arlington, Texas 76002.

      /s/ *Elizabeth M. Carmody*
      OF COUNSEL

26