**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CHELSIE BURROUGHS                              CIVIL ACTION NO. 5:25-CV-01933

VERSUS                                         JUDGE ALEXANDER C. VAN HOOK

KTBS, LLC                                      MAGISTRATE JUDGE HORNSBY

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

In her Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss [Doc. #19], Chelsie

Burroughs cites no authority, jurisprudential or otherwise, to support any of her purported legal

arguments. In evaluating the Complaint, KTBS accepts plaintiff's factual allegations as true but

does not credit legal conclusions or threadbare recitals of the elements of a cause of action. This

evaluation is required under Rule 12(b)(6) and does not convert KTBS' Motion to Dismiss into a

motion for summary judgment. Despite filing an eight-page opposition with 29 pages of exhibits,[1]

Burroughs still fails to allege any facts to state any plausible claims in this lawsuit. The Court does

not have to "accept as true conclusory allegations, unwarranted factual inferences, or legal

conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Defendant's FRCP

12(b)(6) Motion to Dismiss [Doc. #15] should be granted.

***Constructive Discharge Claim.*** Burroughs continues to avoid stating whether she claims

constructive discharge based on her race or her alleged disability. Regardless, she failed to exhaust

her administrative remedies as to this claim. A "plaintiff alleging constructive discharge must have

---

[1] When considering a Rule 12(b)(6) motion to dismiss, "a district court generally must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (internal quotations and citations omitted). "The court may also consider documents attached to . . . an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.* (citations omitted). KTBS assumes without admitting, solely for this motion, that all exhibits attached to plaintiff's Opposition are properly before the Court.

include[d] allegations like or related to her constructive discharge claim." *Ayorinde v. Team Indus. Serv. Inc.*, 121 F.4th 500, 508 (5th Cir. 2024) (internal quotations and citations omitted). Burroughs alleges that her resignation letter (not attached as an exhibit as plaintiff indicates) "explains that the retaliation and harassment continued during leave and became intolerable." Plaintiff's Opp. [Doc. #19], p. 4. Those statements are conclusory but suggest that she relies on actions occurring during her leave which, according to plaintiff, did not start until August 2024, approximately one month after Burroughs alleges she filed the EEOC Charge on July 24, 2024. Burroughs could not have included anything in her EEOC Charge about KTBS contacting her while she was on leave because it had not happened yet, nor could she have referred to her resignation because it, too, had not happened yet. *See Ayorinde*, 121 F.4th at 509; *see also Slayden v. Center for Behav. Med.*, 53 F.4th 464, 469 (8th Cir. 2022) (constructive discharge not reasonably related to EEOC Charge where plaintiff does not mention he is about to be constructively discharged).

The EEOC issued a Notice of Right to Sue letter to Burroughs on September 5, 2025. Complaint [Doc. #1], p. 7. Burroughs initiated litigation after receiving the Notice of Right to Sue. "Where, as here, the EEOC issued previously a Right to Sue Notice, a suit was initiated, and the EEOC terminated its processing of plaintiff's charge, there is no longer a viable charge pending before the EEOC . . . capable of amendment." *Hazeur v. Federal Warranty Serv. Corp.*, No. 99-cv-3156, 2000 WL 365013, at *2 (E.D.La. Apr. 7, 2000) (citing *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994)); *see also EEOC v. Hearst Corp.*, 103 F.3d 462, 469 (5th Cir. 1997); 29 C.F.R. §1601.28(a)(3). Any new EEOC Charge against KTBS would be untimely as it would be filed more than 300 days after she resigned on November 19, 2024. *See* 42 U.S.C. §2000e-5(e)(1) (Title VII); *see also* 42 U.S.C. §12117(a) (ADA).

Even if her constructive discharge claim was viable, which is denied, Burroughs fails to state a plausible claim. Burroughs appears to allege that the following events made her "working

2

conditions . . . so intolerable that a reasonable person in [her] position would have felt compelled to resign," *see Green v. Brennan*, 578 U.S. 547, 555 (2016):

> (1) On March 28, 2024, Bill Lunn responded point by point to Burroughs' email of March 26, 2024, which included complaints of race discrimination, and, in an effort to comply with her requested accommodations (not wanting to be out at night by herself, only being capable of driving alone for less than 20 minutes and needing a "consistent daily work schedule"), offered her two potential work shift options: Monday through Friday from 9:30 a.m. to 6:30 p.m., or Wednesday through Sunday at the same time. (Opp. Exhs. [Doc. #19-1], Exh. 14, pp. 16-17).
>
> (2) On September 25, 2024, and October 1, 2024, Corey Dixon, KTBS' Human Resources Representative, emailed Burroughs to remind her to pay her health, vision, dental and voluntary life insurance premiums while she was on leave so her insurance would not lapse. (*Id.*, at Exhs. 4 and 6, pp. 2-3).
>
> (3) On October 7, 2024, Dixon emailed Burroughs to ask for a copy of her updated vehicle insurance (*Id.*, at Exh. 2, p. 1).
>
> (4) On November 4, 2024, Dixon asked Burroughs if she intended to return to work on November 20, 2024 (*Id.*, at Exh. 3, p. 1).
>
> (5) On November 19, 2024, the last day of leave Burroughs requested on her accommodation form (s*ee id.*, at Exh. 17, p. 22), George Sirven, KTBS' General Manager, emailed Burroughs asking if she intended to return to work (*Id.*, at Exh. 5, p. 3).

Lunn's March 28, 2024-email includes no facts to state a plausible claim that Burroughs was "demoted," which allegation is conclusory. To the extent Burroughs claims she was allowed leave as an ADA accommodation or was on FMLA leave, KTBS could require her to report periodically on her status and intent to return to work and remind her to pay her insurance premiums to maintain that insurance while on leave. *See* 29 C.F.R. §825.311(a); *see also* 29 C.F.R. §825.210(a) – (c).[2] Contrary to Burroughs' unsupported "legal" assertions, she had "no right in the FMLA to be 'left alone.'" *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005). An

---

[2] U.S. Equal Emp. Opportunity Comm'n, Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Questions 21 & 44 (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada.

employer has a right to know when and whether its employee intends to return to work. "Although taking leave . . . limited in duration may be a reasonable accommodation to enable an employee to perform the essential functions of the job upon return, taking leave without a specified date to return or . . . with the intent of never returning is not a reasonable accommodation." *Moss v. Harris County Const. Precinct One*, 851 F.3d 413, 418-19 (5th Cir. 2017).

*Hostile Work Environment Claim.* Burroughs avoids stating whether she bases her hostile work environment ("HWE") claim on her race, religion or disability. She appears to assert that the facts stated in the following emails are sufficient to allege a plausible HWE claim:

(1) On February 16, 2024, Vickie Welborn, a KTBS Manager, emails Burroughs stating, in part, that only news managers can approve scripts (Opp. Exhs. [Doc. #19-1], Exh. 10, p. 8).

(2) On February 16, 2024, Burroughs emails Welborn stating, in pertinent part, that Burroughs feels "singled out, targeted and bullied" and believes it is "discriminatory" (*Id.*, at Exh. 11, p. 9).

(3) On February 26, 2024, Lunn emails the News Department stating that every journalist in the newsroom must have his or her scripts approved by a news manager (*Id.*, at Exh. 8, p. 5).

(4) On March 3, 2024, Burroughs emails Lunn discussing a March 1, 2024-meeting they had during which Lunn told her that "the DA" had called the station stating that the information Burroughs provided in a story was not factual. She states that a comment Lunn made in that meeting was "condescending and insulting." (*Id.*, at Exh. 12, p. 10).

(5) On March 4, 2024, Burroughs emails Dixon with a list of complaints, none of which mention Burroughs' race or claimed disability. She only mentions religion by referring to her telling Lunn on February 9, 2024, that she could not cover a Mardi Gras parade "due to her religious beliefs;" "they respected [her] wishes and [she] did not have to cover the parade." She also states that on February 14, 2024, Lunn essentially asked her how her religious beliefs kept her from covering the parade and then "tried to convince her" that covering the parade was not wrong. (*Id.*, at Exh. 9, p. 6).

(6) On March 4, 2024, Lunn emails Burroughs in response to her March 3-email about their meeting regarding the DA calling about the story of the shooting. (*Id.*, at Exh. 13, pp. 11-12).

None of the emails on which Burroughs relies to assert she has stated a plausible HWE claim include any reference to her alleged disability or race. Taking the non-conclusory, factual statements in the emails cited above as true, Lunn only mentioned her religious accommodation once one week after she asked for and was granted the accommodation. None of the facts upon which Burroughs appears to rely, to the extent they even reference a protected characteristic, are sufficiently severe or pervasive to state a plausible hostile work environment claim.

***FMLA Claims.*** The Court can take judicial notice that October 2024 is twelve months after October 2023 because that date can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2). KTBS assumes, for purposes of its Motion, that plaintiff worked the requisite 1,250 hours during that 12 month period.

Burroughs fails to address the Complaint's lack of non-conclusory, factual allegations stating that she suffered from a "serious health condition" as required for an FMLA interference or retaliation claim. *See Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017) (must allege entitlement to FMLA leave for an FMLA interference claim); *see also Acker v. General Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (same for an FMLA retaliation claim).

Burroughs asserts that the following actions interfered with her alleged rights under the FMLA: (1) Dixon's September 25, 2024, and October 1, 2024, emails reminding Burroughs to pay her insurance premiums to maintain coverage and asking her to update her vehicle insurance with KTBS (on October 7, 2024); and (2) Dixon's and Sirven's emails (on November 4, 2024, and November 19, 2024, respectively) to Burroughs while she was on leave asking if she intended to return to work. Plaintiff's Opp. [Doc. #19], p. 5; Opp. Exhs. [Doc. #19-1], Exhs. 2-6, pp. 1-3. Burroughs appears to rely on these same emails to attempt to state an FMLA retaliation claim.

Again, KTBS was allowed to ask an employee on FMLA leave to report on her intent to return to work and require her to pay her insurance premiums to keep that insurance. *See* 29 C.F.R.

5

§825.311(a); *see also* 29 C.F.R. §825.210(a) – (c). It stands to reason that an employer would also be able to email an employee on FMLA leave to ask her for a copy of her updated vehicle insurance. None of the complained of emails have been or should be found to restrain or discourage an employee's FMLA leave. If Burroughs could be deemed to have been on FMLA leave, she had no right under the FMLA to be left alone. *See Callison*, 430 F.3d at 121.

*Title VII Religious Discrimination Claim.*  Burroughs fails to allege facts regarding her "Christian beliefs" and how she claims they conflicted with covering a Mardi Gras parade, as is required to state a plausible religious discrimination claim. *See e.g., Reichert v. Infusion Parners, L.L.C.*, No. 22-CV-5450, 2023 WL 4685377, at *4 (E.D.La. July 21, 2023). Her reliance on her March 4-email to Dixon relaying various grievances is misplaced. *See* Plaintiff's Opp. [Doc. #19], p. 6; Opp. Exhs. [Doc. #19-1], Exh. 9, p. 6.

> Friday, February 9th, 2024, I told Bill that I would not be able to cover an assignment [a Mardi Gras parade] . . . due to my religious beliefs. I'm not from Louisiana. I did not know what the Mardi Gras Parade was all about until I did my first parade the weekend before. I also did not know what it represents. When I found out, I let Bill know. Granted, they respected my wishes, and I did not have to cover the parade. However, the next week, Wednesday, February 14th, Bill had called me back into his office, {*sic*} to make me explain my religious beliefs and why I chose not to do the assignment [and] tried to convince me that there wasn't anything wrong with covering it.

No facts appear in the paragraph quoted above regarding what her "beliefs" are (other than being a Christian) or how they might conflict with covering a Mardi Gras parade. The stated fact that KTBS was willing to accommodate her request fails to allege an adverse employment action. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 722 n. 2 (2015).

*Title VII Race Discrimination.*  Burroughs implies she has asserted a retaliation claim based on activity protected under Title VII related to her race. Plaintiff's Opp. [Doc. #19], p. 6. Plaintiff did not assert a Title VII retaliation claim in her Complaint and it should not be considered. Even if plaintiff's Complaint can be read to allege such a claim, she has failed to state a plausible

Title VII retaliation claim for the same reasons that she has not alleged a plausible Title VII race discrimination claim.

Plaintiff appears to rely on the emails she relies on for her hostile work environment claim and the following emails as facts sufficient to allege a plausible race discrimination claim:

(1) On March 20, 2024, Burroughs emails Dixon, Lunn and Sirven purporting to "recap" a meeting they had on that same day to address Burroughs' ADA form asking for a "consistent schedule" related to her "medical condition" and stating that not moving her to an evening shift and leaving her on the day shift violated her physician's "order." She claims that failing to do what her physician ordered is a "form of retaliation."

Burroughs also claims she is being discriminated against based on race because she (1) is the only African American reporter and anchor whose scripts have been "overly scrutinized by management," (2) has more experience than the two evening reporters who are not black or African American and Lunn said he would have to think about Burroughs' request to move to the evening shift "because there's no management on that shift," (3) went to management complaining that she felt harassed by Welborn, a Caucasian, and claims that thereafter, "management begin {*sic*} retaliating against" Burroughs, and (4) is the only reporter with an "inconsistent shift" which she claims to be "racial discrimination." (Plaintiff's Opp. Exhs. [Doc. #19-1], Exh. 7, p. 4).

(2) On March 28, 2024, Lunn emails Burroughs to address the points she made in her March 20-email related to alleged race discrimination and provides two options for a "consistent daily work schedule": Monday through Friday 9:30 a.m. to 6:30 p.m. or Wednesday through Sunday 9:30 a.m. to 6:30 p.m. (*Id.*, at Exh. 14, pp. 16-17).

The Welborn complaint Burroughs attaches to her Opposition most recent in time prior to March 20, is her March 4-email to Dixon. *Id.*, at Exh. 9, p. 6. In that email, Burroughs does not refer to her race but, rather, claims, among other things, that Welborn was "harassing" and "bullying" her, had yelled at her across the newsroom and that she was "being singled out." *Id*.

Burroughs claims Lunn's March 28-email "demot[es]" her and "strip[ed]" her of her "anchor duties and status." These statements are conclusory and not supported by any facts in Lunn's email. *See id.*, at Exh. 14, pp. 16-17. Her conclusions need not be accepted as true by the Court. *See Plotkin*, 407 F.3d at 696. Burroughs has not alleged facts sufficient to describe an adverse employment action as required to state a Title VII race discrimination or retaliation claim.

7

*See Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023) (Title VII discrimination); *see also Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 678 (5th Cir. 2021) (Title VII retaliation).

***ADA Discrimination, Failure-to-Accommodate and Retaliation Claims.*** Burroughs relies on the doctor's notes and "ADA paperwork" she attaches to her Opposition to claim that she has alleged facts sufficient to state that she had a disability when she requested the various accommodations. The notes on which she relies state, in pertinent part, that "due to an [or her] underlying condition" (1) Burroughs' solo highway drives are to be limited to less than 20 minutes and if longer than 20 minutes, she needs to have a driver (Plaintiff's Opp. Exhs. [Doc. #19-1], Exh. 15, p. 18), and (2) "she needs a consistent daily work schedule" (i*d.*, at Exh. 16, p. 19). The notes contain no facts about the purported "underlying condition" or why limiting her solo driving time or having a "consistent daily work schedule" would help her perform the essential functions of her job as an Anchor/Reporter/MMJ.

Plaintiff appears to rely on a "Medical Inquiry Form Related to an Accommodation Request" dated March 18, 2024, which described her "temporary impairment" as "[a]nxiety and trouble concentrating." *Id.*, at Exh. 17, p. 27. The form states that plaintiff's "inconsistent work schedule leads to poor sleep quality [and] quantity worsening Anxiety and making it difficult to perform her job thinking on her feet [and] concentrating." *Id.* No suggestions were given of possible accommodations that might enable Burroughs to perform job functions, other than a "consistent work schedule" and not driving for more than 20 minutes. *Id.*

"Consistent" is defined as "marked by harmony, regularity, or steady continuity; free from variation or contradiction." *Consistent*, Merriam-Webster.com Dictionary, def. 1 https://www.merriam-webster.com/dictionary/consistent (last visited Feb. 23, 2026). Based on plaintiff's exhibits, Lunn wrote to Burroughs on March 28, 2024, and offered her two options to accommodate her request for a "consistent schedule": Monday through Friday or Wednesday

through Sunday 9:30 a.m. to 6:30 p.m. *See id*., at Exh. 14, p. 17. The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). Burroughs' request for a consistent schedule was accommodated. She has not alleged that KTBS failed to accommodate her request for limited solo highway driving time.

Plaintiff also appears to rely on a "Medical Inquiry Form Related to an Accommodation Request" dated July 24, 2024, wherein Burroughs' "temporary impairment" is described as "Generalized Anxiety Disorder [with] Panic disorder." *Id.*, p. 20. On this form, Burroughs asks for continuous leave starting on August 19, 2024, with her "possibly" returning to work on November 19, 2024. *Id.*, at p. 22. No suggestions were given of possible accommodations, other than three months away from work. *Id.*, at p. 21. The form states that her next scheduled appointment would not be until September 23, 2024, almost two months after the July 24-form. *Id*. It states that the alleged impairment substantially limited the major life activities of concentrating, interacting with others, thinking and working," and that her limitations impede her ability to interview people, participate in "live shots" and anchor. *Id.*, at pp. 20-21. It also states that, upon returning to work, Burroughs would need to "[l]imit exposure of live shots" with the hope of improving and decreasing her triggers for panic with medications, therapy and time. *Id.*

Burroughs fails to state facts sufficient to allege a plausible claim that she was a qualified individual under the ADA or that her request for three months' leave was not "accommodated." She was given three months away from work and resigned on the date the form indicated she would "possibly" be returning to work.

Plaintiff fails to allege facts sufficient to state a plausible ADA retaliation claim. Burroughs relies on her March 4-email "grievance" and March 20-"recap email" as the protected activity upon which she bases her retaliation claim. Plaintiff's Opp. [Doc. #19], p. 7. The March 4-email

does not refer to Burroughs' alleged disability and, thus, does not constitute protected activity under the ADA. *See* Plaintiff's Opp. Exhs. [Doc. #19-1], Exh. 9, p. 6. Further, even if the March 20-email is considered ADA-protected activity because she asserts that not giving her the preferred accommodation is an ADA violation, Burroughs fails to allege facts sufficient to state an adverse employment action causally related to her March 20-email. *See id.*, at Exh. 7, p. 4. Plaintiff asserts that the adverse employment action is Lunn's March 28-email based on her conclusory allegation that she was "demoted" and stripped of her anchor duties. *See* Plaintiff's Opp. [Doc. #19], p. 7; *see also* Plaintiff's Opp. Exhs. [Doc. #19-1], Exh. 14, pp. 16-17. As stated above, Lunn's March 28-email includes no facts to indicate that offering Burroughs two "consistent shift" options, as requested, was a "demotion," or stripped her of any "status" or "anchor duties."

***Plaintiff is Not Entitled to Amend Her Complaint.*** "A bare request in an opposition to a motion to dismiss -- without any indication of the particular grounds on which the amendment is sought, . . . -- does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Burroughs asks for leave to amend in her opposition but does not explain with particularity the grounds for the amendment. Under Rule 15(a), the Court "should freely give leave when justice so requires," unless there is a substantial reason to deny leave to amend. *Doe 1 v. City View Indep. Sch. Dist.*, 150 F.4th 668, 677 (5th Cir. 2025). One of those substantial reasons is futility of amendment. *See Forman v. Davis*, 371 U.S. 178, 182 (1962); *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). "An amendment is futile if the amended complaint would fail to state a claim upon which relief could be granted" under Rule 12(b)(6). *Doe 1*, 150 F.4th at 677 (internal citations and quotations omitted); *see also Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022). KTBS' Motion to Dismiss should be granted, and plaintiff not allowed leave to amend, to the extent that an amendment would be futile.

Respectfully submitted,

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By:    s/ *Elizabeth M. Carmody*
        Elizabeth Mendell Carmody, #25792
        Luke D. Whetstone, #37355

333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA 71120-2260
Telephone: (318) 221-6277
Telecopier: (318) 227-7850
elizabeth.carmody@cookyancey.com
luke.whetsone@cookyancey.com

ATTORNEYS FOR DEFENDANT,
KTBS, LLC

## CERTIFICATE

I HEREBY CERTIFY that on the 25th day of February, 2026, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, with notice to be sent by operation of the court's electronic filing system to all counsel of record with notice to be sent by operation of the court's electronic filing system to all counsel of record, and with a copy sent to Plaintiff Chelsie Burroughs, via her email address at Chelsieburroughs83@gmail.com, and via certified US mail, return receipt requested 9589 0710 5270 2956 1451 46, at 9584 Eden Road, Apt. 1318, Arlington, Texas 76002.

        s/ *Elizabeth M. Carmody*
        OF COUNSEL

11