**PROPOSED SUR-REPLY**

MAY IT PLEASE THE COURT:

Defendant's reply reads as if this case were at summary judgment. It is not. The question before the Court is not whether Defendant has articulated an alternative explanation for the events Plaintiff pleads. The question is whether Plaintiff has pleaded enough factual matter to state plausible claims. She has. Defendant's reply repeatedly asks the Court to credit Defendant's preferred inferences, to discount the plain significance of management's own written words, and to slice an alleged campaign of discrimination and retaliation into isolated fragments. That is not the Rule 12 inquiry.

## I. THE DEFENDANT'S REPLY MISSTATES THE RULE 12(b)(6) FRAMEWORK

Rule 12(b)(6) does not authorize the Court to decide which side's characterization of the facts is more persuasive. Under Twombly and Iqbal, the Court asks whether the pleaded facts permit a reasonable inference of liability. The Fifth Circuit has repeatedly warned against dismissals that rely on competing factual explanations rather than on the insufficiency of the pleading itself. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 257-58 (5th Cir. 2009).

Defendant says Plaintiff cited little authority. Even if that were true, it would not transform a factually specific complaint into a deficient one. But the more basic point is that the pleading itself, not the opposition brief, is what must satisfy Rule 8. Here the complaint alleges a coherent chronology: medical restrictions communicated to KTBS; race, disability, and religion complaints made to management and HR; same-day and near-immediate escalation of scrutiny following those complaints; denial or distortion of accommodations; compelled weekly status updates during medical leave; repeated leave-period contact regarding insurance and return-to-work; and a termination-tinged ultimatum on the final day of leave. Those are facts, not labels.

Defendant's reply also tries to use Plaintiff's attached exhibits against her by offering benign explanations for each communication. But documents attached to an opposition may be

4

considered when they are referenced in the pleadings and central to the claims, and when they are considered at the Rule 12 stage the Court still must read them in the light most favorable to the nonmovant. The Court is not required to adopt the employer's spin on those documents. It is enough that the exhibits can reasonably support Plaintiff's interpretation. They plainly can.

2. Defendant itself acknowledged in its reply that, solely for purposes of the motion, it assumed without admitting that Plaintiff's exhibits were properly before the Court. Defendant therefore cannot both rely on those documents and insist that the Court read them only through Defendant's chosen lens.

## II. EXHAUSTION DOES NOT BAR THE CONSTRUCTIVE DISCHARGE THEORY

### A. The Fifth Circuit does not require a hyper-technical identity between charge and complaint.

Defendant's exhaustion argument takes far too cramped a view of what the EEOC charge must contain. In this Circuit, the judicial complaint may encompass not only the precise words of the administrative charge but also claims that 'can reasonably be expected to grow out of the charge of discrimination.' Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006). The purpose of exhaustion is notice and investigation, not a trapdoor that lets an employer escape liability when retaliation escalates after the charge is filed.

That principle matters here. Plaintiff's EEOC materials alleged race discrimination, religious discrimination, disability discrimination, and retaliation. The resignation did not arise from some unrelated new dispute. Plaintiff's constructive discharge letter states that the retaliation and harassment continued during leave, that HR pressured her while she was medically excused, that her privacy had been breached, and that the environment had become intolerable. Those allegations are a direct continuation of the course of conduct already before the EEOC.

### B. Post-charge retaliation is routinely treated as reasonably related to the pending charge.

The Fifth Circuit has long recognized that retaliation growing out of the filing of an EEOC charge may be pursued without requiring a second administrative filing. Gupta v. East Tex. State Univ., 654 F.2d 411, 414 (5th Cir. 1981). Although Defendant relies on Ayorinde, Ayorinde does not erase Gupta's common-sense principle that post-charge retaliation and its culmination may remain within the reasonable scope of the original proceeding.

Defendant's reply treats the sequence of events as if anything occurring after July 24, 2024 is categorically outside exhaustion. That is not the law. If it were, every employer could intensify retaliatory conduct immediately after a charge and then argue that the employee was required to begin the administrative process anew each time the retaliation changed form. The Fifth Circuit has never embraced such a loophole.

6

**C. Ayorinde is distinguishable, and at minimum does not justify dismissal at the pleading stage.**

Ayorinde involved an exhaustion problem tied to the plaintiff's own failure to include allegations like or related to the later claim. Here, by contrast, Plaintiff's charge already alleged retaliation, discrimination, and a hostile pattern. Defendant's reply essentially asks the Court to decide, on a motion to dismiss, the factual scope of the EEOC investigation that would naturally follow Plaintiff's charge. That is premature. At minimum, the question whether Plaintiff's constructive discharge theory is reasonably related to the original charge is not one that should be resolved against a pro se plaintiff on the pleadings alone.

3. Defendant also cites Hazeur for the proposition that once a right-to-sue notice issues there is no 'viable charge' to amend. Even if that proposition has force in some contexts, it does not answer the separate question whether a post-charge retaliation or constructive discharge theory is reasonably related to the charge already filed. The issue here is scope, not merely amendment mechanics.

7

## III. PLAINTIFF PLAUSIBLY PLEADS CONSTRUCTIVE DISCHARGE UNDER GREEN v. BRENNAN

### A. Constructive discharge turns on cumulative intolerability, not isolated atomized events.

Defendant's reply lists five leave-period or post-complaint events and asks the Court to declare each one innocuous in isolation. Green v. Brennan forecloses that atomized approach. Constructive discharge exists when the employee's working conditions become so intolerable that a reasonable person in her position would feel compelled to resign. 578 U.S. 547, 555 (2016). And in this Circuit, courts examine the totality of circumstances, including demotion, reduction in responsibilities, humiliation, and badgering calculated to encourage resignation. See Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000).

Plaintiff has pleaded exactly that kind of cumulative pattern. She alleges that after she complained about harassment, discrimination, and accommodation failures, management escalated scrutiny and negative messaging; that Lunn sent a same-day rebuttal on March 4, 2024 attacking her competence and 'posture' while copying multiple managers and her agent; that on March 28, 2024 he offered only shift options Plaintiff alleges would effectively strip anchor duties and prestige; that while on medical leave she was required to provide weekly condition updates; that HR repeatedly emailed and texted her about premiums and status; and that on November 19, 2024 the General Manager sent an ultimatum stating that if she did not respond by close of business, KTBS would assume she did not intend to return and her employment would be subject to termination.

### B. The March 28 letter is plausibly adverse and plausibly part of the intolerable conditions.

Defendant insists the March 28 letter cannot amount to a demotion because it did not use the word 'demotion.' That is not the standard. The relevant question is whether the employer materially altered job duties, status, or working conditions. Hamilton v. Dallas County makes clear that Title VII reaches discrimination with respect to the terms, conditions, or privileges of employment and does not require the old 'ultimate employment decision' formulation. 79 F.4th 494, 506-07 (5th Cir. 2023) (en banc). Plaintiff was hired as a Weekend

8

Anchor/Reporter/MMJ. She alleges the March 28 options would strip anchor responsibilities or otherwise fundamentally alter the role she accepted. That is more than enough to plead an adverse shift in status and responsibilities.

## C. Leave-period pressure can contribute to constructive discharge.

Defendant argues that because Plaintiff was on leave, there could be no intolerable workplace. That argument fails both legally and logically. Green recognizes that constructive discharge turns on whether the employment relationship has become objectively untenable. That analysis can plainly include what the employer does while the employee is away - especially if the employee is on medically supported leave and the employer uses that period to impose pressure, uncertainty, and threats.

The leave-period documents are not trivial when read together. On September 25, 2024, HR wrote: 'Please remember ... you must pay KTBS your share of the premiums ... That payment is due today. I remind you that any failure by you to timely pay your portion of the premiums could result in termination of coverage by the insurer.' On October 1, 2024, HR texted: 'We need that payment today so we can keep your insurance current and up to date.' On October 7, 2024, HR requested updated vehicle insurance while Plaintiff remained on leave. On November 4, 2024, HR asked whether Plaintiff still planned to return on November 20. And on November 19, 2024, the General Manager warned that if KTBS did not hear from Plaintiff by the end of the day, it would assume she did not intend to return and her employment would be subject to termination.

An employer may not convert status inquiries into coercive pressure and then dismiss the employee's response as overreaction. A reasonable employee already alleging discrimination, retaliation, privacy breaches, and accommodation failures could read that final message as confirmation that return was neither safe nor realistic.

---

4. Defendant cites Moss v. Harris County for the unremarkable proposition that indefinite leave is not a reasonable accommodation. But Plaintiff did not request indefinite leave. The July 24 accommodation form identified a finite period and a possible return date. Moss therefore does not undermine the plausibility of Plaintiff's theory.

9

## IV. HOSTILE WORK ENVIRONMENT IS PLAUSIBLY ALLEGED UNDER TITLE VII AND THE ADA

**A. The Court must evaluate the whole pattern, not strip each event of context.**

Defendant's hostile-work-environment section is built on the same error: sever each event from the context that gives it meaning. The Fifth Circuit does not assess hostile-environment claims through a microscope. It looks to the frequency of the conduct, its severity, whether it is humiliating or threatening, and whether it interferes with work performance. Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651-52 (5th Cir. 2012); Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005).

Here, Plaintiff pleads targeted script scrutiny, selective enforcement of newsroom approval practices, after-hours contact by Welborne, closed-door meetings with condescending questioning, interrogation concerning religious beliefs, public or quasi-public undermining of her professional credibility, and a same-day retaliatory message from Lunn after she escalated to HR. The complaint is not built on one offensive utterance. It is built on a pattern of supervisory conduct that, viewed cumulatively, can reasonably be found severe or pervasive enough to alter the conditions of employment.

**B. Explicit references to race or disability are not required in every email.**

Defendant repeatedly says that several emails do not expressly mention race or disability. That proves nothing. Circumstantial evidence and comparative treatment matter. The law does not require every discriminatory act to announce its motive in writing. Plaintiff's March 20, 2024 recap email states that she was the only African American reporter and anchor whose scripts were overly scrutinized, the only one with an inconsistent shift, and the only one management insisted needed micromanagement if moved to evenings. Those are comparator-based factual allegations, not bare conclusions.

Likewise, the February 16 email exchange is significant not because Welborne used a slur, but because Plaintiff specifically documented that the rule Welborne was suddenly enforcing had not been enforced against other journalists who sent scripts to the broader newsroom. Plaintiff's response asked whether the rule applied to everyone or 'just me' and stated that she

10

felt singled out, targeted, and bullied. When a plaintiff contemporaneously records disparate treatment and management responds with a new policy tightening control, that sequence is probative of motive.

## C. The March 4 email and the policy shift are plausibly retaliatory components of the hostile environment.

Plaintiff's March 4 grievance to HR recounted a series of events: being yelled at across the newsroom; having a Black History Month story resisted and then seemingly punished; being questioned about religious beliefs after requesting not to cover Mardi Gras; seeing her scripts altered; and being called after hours by Welborne. Hours later, Lunn responded point-by-point in a lengthy email that not only rejected Plaintiff's concerns but also invoked alleged external complaints, challenged her understanding of journalism, criticized her 'posture,' and copied managers and Plaintiff's agent. A reasonable factfinder could view that as an effort to isolate Plaintiff, damage her standing, and make further complaint costly.

---

5. The Fifth Circuit has recognized that the retaliation standard is broader than the standard governing discrimination claims. Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006). Even if some acts were not independently dispositive, they may still be materially adverse in the retaliation context or contribute to a hostile pattern.

11

## V. PLAINTIFF PLAUSIBLY PLEADS TITLE VII RACE DISCRIMINATION AND RETALIATION

### A. Hamilton forecloses Defendant's cramped adverse-action theory.

Defendant's reply continues to rely on an outdated instinct that only hiring, firing, or express demotion counts. Hamilton rejected that narrow formulation. A plaintiff states a Title VII disparate-treatment claim by alleging discrimination with respect to the terms, conditions, or privileges of employment. 79 F.4th at 506. Plaintiff has done so. She alleges differential scrutiny, differential schedule treatment, differential policy enforcement, and a March 28 restructuring of duties and schedule after protected complaints. Those allegations fit comfortably within Hamilton's understanding of Title VII.

### B. Plaintiff's comparator allegations are factual, not formulaic.

Defendant labels Plaintiff's race allegations 'conclusory' because Plaintiff did not identify every comparator in rigid prima facie form. But the Fifth Circuit does not require a complaint to plead a summary-judgment record. Plaintiff alleged, contemporaneously, that other named newsroom employees had sent scripts to the entire newsroom without reprimand; that she was the only African American anchor/reporter subjected to extraordinary scrutiny; and that less experienced non-Black evening reporters were not treated as requiring management oversight. Those allegations give fair notice of the comparative theory and make race-based disparate treatment plausible.

### C. The retaliation sequence is unusually direct.

The retaliation chronology is not speculative. On March 4, 2024, Plaintiff filed a detailed grievance. On that same date, Lunn sent a performance-oriented rebuttal that widened the audience to station leadership and Plaintiff's agent. On March 20, 2024, Plaintiff again complained, this time explicitly asserting ADA violations and race discrimination. Eight days later, on March 28, 2024, Lunn issued the schedule and role letter that Plaintiff reads as a stripping of anchor status. Few pleading-stage complaints present temporal proximity this tight.

12

Porter v. Houma Terrebonne Housing Authority teaches that close timing plus escalating antagonism can support a retaliation inference. 810 F.3d 940, 948-49 (5th Cir. 2015). Plaintiff's allegations satisfy that standard.

## VI. PLAINTIFF PLAUSIBLY PLEADS RELIGIOUS DISCRIMINATION AND RETALIATION

### A. Defendant demands doctrinal detail beyond what Rule 8 requires.

Defendant's reply faults Plaintiff for not explaining her Christian beliefs in enough detail. That argument overreads cases concerning generic or unsupported religious objections. Plaintiff did more than identify as Christian in the abstract. She alleged that she informed management she could not cover Mardi Gras because it conflicted with her sincerely held beliefs, that management removed the assignment, and that a week later Lunn summoned her and pressed her to explain the beliefs and attempted to persuade her that there was nothing wrong with covering the parade.

At the pleading stage, Plaintiff need not deliver a theological treatise. The issue is whether she alleges a sincere religious practice or belief, notice to the employer, a conflict with a work requirement, and adverse treatment or coercive pressure in response. Her grievance email and complaint do exactly that. EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 772-73 (2015), recognizes that Title VII protects employees from being forced to choose between work requirements and religious practice. Pressure and questioning after an accommodation request may itself support a claim, particularly where Plaintiff alleges later hostility flowing from the accommodation request.

### B. The fact that the assignment was initially removed does not eliminate later retaliation.

Defendant treats the initial removal of the parade assignment as a complete defense. It is not. Plaintiff's claim is not limited to denial of the original request. It includes what happened next: the closed-door questioning, the attempt to persuade her her beliefs were mistaken, and the subsequent pattern of exclusion from team coverage that Plaintiff alleges began after the Mardi Gras issue. A claim of retaliation or religiously tinged hostility survives even when the employer nominally grants one discrete accommodation but then penalizes the employee for having sought it.

14

Case 5:25-cv-01933-SMH-MLH   Document 23   Filed 03/18/26   Page 12 of 18 PageID #: 272

## VII. PLAINTIFF PLAUSIBLY PLEADS ADA DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION

**A. Plaintiff sufficiently pleads disability and qualifying limitations.**

Defendant tries to reduce Plaintiff's disability allegations to mere diagnoses. That is inaccurate. Plaintiff pleaded functional limitations and attached physician documentation. On November 16, 2023, Dr. Danielle Ivey wrote that due to an underlying medical condition Plaintiff should limit solo highway drives to less than twenty minutes and, if longer drives were required, should have a second person who could drive. On March 6, 2024, Dr. Ivey wrote that due to her underlying medical condition Plaintiff needed a consistent daily work schedule. Later ADA-related paperwork described generalized anxiety disorder with panic attacks and stated that the condition substantially limited major life activities including concentrating, interacting with others, thinking, and working.

The ADAAA requires broad construction of disability. 42 U.S.C. § 12102(4)(A). The Fifth Circuit likewise recognizes that the disability inquiry after the ADA Amendments Act is not meant to be demanding. Cannon v. Jacobs Field Servs. N. Am., Inc., 813 F.3d 586, 590-91 (5th Cir. 2016). Plaintiff's allegations easily cross the pleading threshold.

**B. Plaintiff plausibly alleges she could perform the job with reasonable accommodation.**

Defendant argues Plaintiff was not a qualified individual because her limitations affected interviewing, live shots, and anchoring. That argument overreads the July 24 paperwork and ignores Plaintiff's allegation that finite leave, medication, therapy, and reduced triggers would allow her to return. A finite leave with a possible return date is not the same as an admission of permanent inability to perform. Moss's rejection of indefinite leave does not control where the requested leave was bounded in time and tied to anticipated treatment and recovery. 851 F.3d at 418-19.

More fundamentally, qualification under the ADA asks whether the employee could perform the essential functions with or without reasonable accommodation. Plaintiff alleges she had in fact been performing her job while seeking accommodations for driving and scheduling; that the stress and harassment were worsening her condition; and that a consistent schedule, limited

15

solo driving, and later a finite leave would enable continued or resumed performance. Those allegations are sufficient.

## C. Defendant's 'we accommodated her' argument fails because the interactive process is itself at issue.

Defendant insists it accommodated Plaintiff by offering two 'consistent schedule' options on March 28. But the ADA does not permit an employer to declare victory by offering any schedule it prefers, regardless of its practical effect on the employee's actual job. The Fifth Circuit has repeatedly emphasized that the accommodation process must be interactive, reciprocal, and in good faith. See Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736-39 (5th Cir. 1999); Dillard v. City of Austin, 837 F.3d 557, 562-65 (5th Cir. 2016).

Plaintiff alleges that the March 28 options did not genuinely preserve her weekend anchor role and instead amounted to a loss of the anchor position or its meaningful incidents. She also alleges that management had already signaled hostility to the accommodation request and to her complaints by placing her work under more scrutiny and by keeping her in the orbit of the very supervisors she said were exacerbating the condition. A one-sided 'option' that strips status, ignores the employee's actual role, and follows retaliatory conduct does not foreclose a failure-to-accommodate claim at the pleading stage.

## D. ADA retaliation is plausibly alleged.

Protected activity under the ADA includes requesting accommodation and complaining that the employer failed to accommodate or discriminated because of disability. Plaintiff did both. The March 20 recap email expressly stated that management's refusal to modify her schedule was, in Plaintiff's view, a violation of the ADA and a form of retaliation. Within eight days came the March 28 role-and-schedule letter. Temporal proximity of that magnitude is enough to support plausibility. See Feist v. La. Dep't of Just., 730 F.3d 450, 454 (5th Cir. 2013).

6. Defendant also argues the March 4 grievance was not ADA-protected because it did not expressly mention disability. Even if the Court accepts that narrow reading of the March 4 grievance, the March 20 recap indisputably invokes the ADA accommodation request and management's refusal to implement it.

## VIII. PLAINTIFF PLAUSIBLY PLEADS FMLA INTERFERENCE AND RETALIATION

### A. The complaint plausibly alleges a serious health condition and entitlement to leave.

Defendant says Plaintiff did not plead a serious health condition. But Plaintiff alleged physician-supported anxiety, panic attacks, concentration limitations, and a later finite leave request supported by medical documentation. The FMLA and its regulations define a serious health condition to include conditions involving continuing treatment by a health care provider and periods of incapacity. 29 C.F.R. §§ 825.113, 825.115. At the pleading stage, Plaintiff was not required to attach medical charts or prove the full diagnostic record. She needed to allege enough to make the leave entitlement plausible. She did.

### B. Interference includes discouragement, not merely outright denial.

Defendant's reply repeatedly suggests that because some forms of employer contact are permitted during leave, Plaintiff cannot state interference as a matter of law. That is wrong. The regulations expressly prohibit employers from 'interfering with, restraining, or denying' the exercise of FMLA rights, and they also prohibit using the taking of FMLA leave as a negative factor. 29 C.F.R. § 825.220(b)-(c). Interference is broader than an express refusal to approve leave.

Plaintiff alleges not just occasional status checks, but compelled weekly status updates regarding her condition; pressure to make insurance payments immediately; repeated return-to-work inquiries; use of both work and personal channels; and an end-of-leave email threatening that if she did not respond that day, KTBS would assume she was not returning and her employment would be subject to termination. Even if each communication might be defended in isolation, the overall pattern is plausibly discouraging and coercive. The factfinder - not the Court on a motion to dismiss - must decide whether the contact remained administrative or crossed into interference.

### C. Defendant overreads Callison.

Callison's statement that there is no FMLA right to be 'left alone' does not grant employers carte blanche to use leave-period communications as leverage. Callison upheld a neutrally

17

applied call-in policy. It did not bless retaliatory tone, threat-laden communications, or a pattern that a reasonable employee could understand as pressure to return or risk termination. Plaintiff's allegations fall on the latter side of the line.

### D. FMLA retaliation is plausibly alleged.

Retaliation under the FMLA requires protected activity, materially adverse action, and causal connection. Caldwell v. KHOU-TV, 850 F.3d 237, 245 (5th Cir. 2017). Plaintiff alleges she sought and used protected leave, that while on leave she was subjected to repeated pressure and an ultimatum, and that the whole sequence occurred against the backdrop of earlier discrimination complaints and management hostility. Even if Defendant ultimately offers a benign explanation, Plaintiff has easily pleaded enough to proceed.

## IX. THE MARCH 4 AND MARCH 28 DOCUMENTS ARE CENTRAL, AND DEFENDANT'S ATTEMPT TO MINIMIZE THEM FAILS

Two documents sit at the heart of Defendant's reply but are never confronted honestly: the March 4, 2024 Lunn email and the March 28, 2024 role-and-schedule letter. They matter because they show how management reacted when Plaintiff put concerns in writing.

The March 4 email was sent the same day Plaintiff filed her grievance to HR. It did not merely answer one factual question. It widened the dispute, invoked alleged third-party complaints, suggested Plaintiff lacked understanding, and commented on her demeanor or 'posture.' Defendant dismisses that as routine supervision. But routine supervision is not ordinarily launched within hours of a grievance and copied to multiple managers and the employee's agent. That distribution choice itself supports an inference of punitive intent and reputational harm.

The March 28 letter likewise cannot be waved away as a harmless scheduling memo. By Defendant's own description, it was a point-by-point response to Plaintiff's March 20 email raising race discrimination and ADA accommodation issues. It then offered only two schedule structures that Plaintiff alleges would force her out of the anchor role or otherwise materially diminish the position she held. Under Hamilton, that is enough to plead an adverse change in the terms and conditions of employment.

**A. Defendant's reliance on unverified third-party complaints does not defeat plausibility.** Defendant leans on alleged outside complaints - for example, statements attributed to the District Attorney's office and to Ed Walsh - to justify management's scrutiny. But Rule 12 does not permit the Court to accept the truth of those unattributed or untested assertions over Plaintiff's contrary account. Plaintiff specifically alleges that these complaints were not raised until after she complained, were not shown to her in substantiated form at the time, and were used to rationalize heightened oversight after protected activity. That is a plausible retaliation narrative, and Defendant's alternative explanation cannot defeat it at this stage.

19

## X. LEAVE TO AMEND SHOULD NOT BE DENIED AS FUTILE

Defendant's reply asks the Court not only to dismiss, but to dismiss with prejudice and to deny any amendment as futile. That request is especially unwarranted here. Rule 15 embodies a strong presumption in favor of amendment, and futility exists only when the amended pleading would still fail as a matter of law. Foman v. Davis, 371 U.S. 178, 182 (1962).

If the Court concludes that any allegation should be tied more expressly to a particular count - for example, that the constructive discharge theory should be more explicitly linked to Title VII retaliation or ADA retaliation, or that additional details about the leave period would sharpen the FMLA theory - that is precisely the sort of issue amendment is meant to cure. Defendant's futility position depends on accepting Defendant's merits arguments. Because those merits arguments do not justify dismissal now, they certainly do not justify foreclosing amendment altogether.

7. The Western District's local rules require that motions exceeding ten pages contain a table of contents and a table of authorities. W.D. La. Local Rules 7.1 and 7.8. Plaintiff has endeavored to comply with those format requirements in seeking leave to file this sur-reply.

## XI. CONCLUSION

Defendant's reply does not show that Plaintiff's claims are implausible. It shows, at most, that Defendant disputes Plaintiff's account and prefers its own. That is not enough for dismissal. Plaintiff has pleaded specific facts, anchored to dates, names, direct quotations, and medical documentation, that plausibly state claims for race discrimination, religious discrimination, disability discrimination, hostile work environment, retaliation, failure to accommodate, FMLA interference, FMLA retaliation, invasion of privacy/confidentiality-related harm, and constructive discharge.

For those reasons, Plaintiff respectfully requests that the Court grant leave to file this sur-reply and, upon consideration of the attached sur-reply, deny Defendant's Rule 12(b)(6) motion in full. In the alternative, if the Court determines that any particular allegation requires further detail, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

Respectfully submitted,

20

Chelsie Burroughs

9584 Eden Rd, Apt. 1318

Arlington, Texas 76002

817-262-9535

chelsieburroughs83@gmail.com

21