UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHELSIE BURROUGHS                              CIVIL ACTION NO. 25-cv-1933

VERSUS                                         JUDGE VAN HOOK

KTBS, LLC                                      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Chelsie Burroughs ("Plaintiff"), who is self-represented, filed this civil action against her former employer, KTBS, LLC. Plaintiff alleges violations of Title VII, the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"). Before the court is KTBS's Motion to Dismiss (Doc. 15) that attacks Plaintiff's several claims for either failure to exhaust administrative remedies or failure to state a claim on which relief may be granted. For the reasons that follow, it is recommended that the motion be granted in part and denied in part.

**Plaintiff's Allegations**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). The court may also consider exhibits attached to a complaint, which are part of the complaint "for all purposes." Fed. R. Civ. P. 10(c). That includes the assessment of a Rule 12(b)(6) motion. U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004).

Plaintiff filed her complaint on a form provided by the court for use in employment discrimination cases. She checked boxes to indicate that she asserts claims under Title VII, the ADA, and the FMLA. In the section for statement of claim, Plaintiff wrote that the conduct of which she complains includes (1) unequal terms and conditions of employment, (2) failure to accommodate her disability, (3) retaliation, and (4) constructive discharge.

Plaintiff alleged that she is "an African American Weekend Anchor/Reporter/MMJ (multimedia journalist) who began working for KTBS in October 2023." She pitched a Black History Month story to News Director Bill Lunn in February 2024, after which manager Vickey Welborne "began targeting my work." Plaintiff alleged that Welborne "falsely claimed the story was 'done every year' and then began subjecting my scripts to unusual scrutiny, rewrites, and negative treatment that other anchors and reporters did not receive."

Also in February 2024, Plaintiff "informed management that covering a Mardi Gras parade conflicted with my sincerely held Christian beliefs." She admitted that the "assignment was removed" but complained that Bill Lunn called her into his office the next week and "questioned my religious beliefs, and tried to convince me that participating in Mardi Gras was not wrong."

Plaintiff filed a grievance with human resources in March 2024 that complained of harassment and discriminatory treatment by Vickey Welborne. Shortly afterward, Bill Lunn sent a written response and stated that Plaintiff was sensitive to critiques and that her work would be under more scrutiny. Plaintiff characterized the email and a follow-up

meeting with management as having "made clear that my protected complaints would result in increased scrutiny instead of protection."

Plaintiff alleged that KTBS improperly deducted four hours from an upcoming paycheck, even though she was a salaried employee and had completed her work. She believed that the deduction "was retaliatory." Plaintiff requested throughout the spring of 2024 that she be allowed reasonable accommodation for her "diagnosed anxiety and panic disorder, including a consistent schedule and transfer to an evening shift as recommended by my physician." Management refused to make the accommodation and "instead told me I could either remain on my stressful schedule or accept a demotion to reporter only."

Plaintiff alleged that in July 2024 her symptoms worsened, and she requested medical leave. She was placed on leave the next month, August of 2024. Plaintiff complains that, while she was on leave, HR representative Corey Dixon "repeatedly contacted me by text and email about work and insurance," told Plaintiff that she was responsible for paying insurance premiums, and "required mandatory weekly check-ins where I had to report whether my medical condition had changed." Plaintiff asserted that those actions "interfered with my FMLA rights and increased my anxiety."

HR representative Corey Dixon is also alleged to have "disclosed confidential information about my EEOC charge" in August 2024. The coworker to whom the disclosure was made allegedly spread the information around the newsroom. Plaintiff contends this was a breach of confidentiality and resulted in gossip that caused her humiliation, damage to her reputation, and "worsened the hostile work environment."

Plaintiff complained that KTBS management failed to stop the alleged harassment, failed to accommodate her disabilities, and "continued to retaliate against me." Her working conditions allegedly became so intolerable that on November 19, 2024, while still on medical leave, she submitted a written notice that stated she considered herself constructively discharged.

**Rule 12(b)(6) Burden**

KTBS's challenges to Plaintiff's claims invoke Fed. R. Civ. Pro. 12(b)(6) and argue that the complaint fails to state a claim on which relief may be granted. To avoid dismissal, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

**Constructive Discharge**

Plaintiff asserts a claim for constructive discharge. She does not specify in her complaint whether this claim is based on Title VII or the ADA, but claims asserted under either statute require that a plaintiff first exhaust their administrative remedies by filing a charge with the EEOC before filing suit in federal court. Ernst v. Methodist Hosp. Sys., 1 F.4th 333, 337 (5th Cir. 2021) (Title VII); Jennings v. Towers Watson, 11 F.4th 335, 342

(5th Cir. 2021) (ADA).  KTBS argues that any such constructive discharge claim should be dismissed for failure to first exhaust administrative remedies.

KTBS's non-exhaustion argument is an affirmative defense, so the burden is on KTBS to demonstrate non-exhaustion, and it must do so in a Rule 12(b)(6) contest based on the face of the complaint (and its exhibits).  Hamilton v. Promise Healthcare, 2023 WL 6635076, *3 (5th Cir. 2023), citing Fort Bend County v. Davis, 139 S.Ct. 1843 (2019).  Plaintiff's exhibits to her complaint include her EEOC charge of discrimination dated July 24, 2024.  Plaintiff checked boxes on the charge form to indicate that she complained of discrimination based on race, religion, and disability.  She also noted a claim of retaliation.  The form asked for an indication of the dates the discrimination took place.  Plaintiff wrote that the latest was July 22, 2024, but she did check a box to indicate "continuing action."

Plaintiff attached to her EEOC charge a written narrative that set forth allegations similar to those found in her complaint (panic attacks, retaliation, micromanaged, no change in job duties to accommodate disability).  Neither the July 24, 2024 charge nor the narrative mentioned a claim of constructive discharge, which would have been impossible because Plaintiff did not resign until several months later on November 19, 2024.  Her dated resignation letter is attached to her complaint.

An employee may file a lawsuit not only upon the specific complaints made in her EEOC charge but also upon any kind of discrimination like or related to the charge's allegations.  The suit is limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charge of discrimination.  Fellows v.

Universal Restaurants, Inc., 701 F.2d 447, 450-51 (5th Cir. 1983), citing Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970).

The court must determine whether the EEOC charge stated sufficient facts to trigger an EEOC investigation and put the employer on notice of the existence and nature of the claim at issue.  Stone v. Louisiana Dep't of Revenue, 590 Fed. Appx. 332, 338 (5th Cir. 2014).  The magic words "constructive discharge" need not appear in the charge, but a plaintiff alleging constructive discharge must have included allegations like or related to her constructive discharge claim.  Ayorinde v. Team Indus. Servs. Inc., 121 F.4th 500, 508 (5th Cir. 2024) (EEOC charge that asserted discrimination in scheduling did not allege working conditions so intolerable that a reasonable person would feel compelled to resign, so constructive discharge claim was not exhausted).

In Stone, 590 Fed. Appx. at 338, an EEOC charge filed while the employee was still employed was not sufficient to exhaust a claim of constructive discharge based on a resignation that took place several months later.  The Fifth Circuit noted in Phillips v. Caris Life Scis., Inc., 715 Fed. Appx. 365 (5th Cir. 2017) that a claimant may, after filing a charge, amend her initial charge to clarify and amplify her allegations.  29 C.F.R. § 1601.12(b).  The plaintiff in Phillips filed an EEOC charge on September 26, 2011 but did not amend it following her termination on November 7, 2011.  The Court held that she failed to exhaust her administrative remedies with respect to the termination.  "Termination is a discrete event for which a claimant must file a supplemental charge or amend the original EEOC charge."  Phillips, 715 Fed. Appx. at 369.

Plaintiff's EEOC charge complained of various alleged incidents of workplace mistreatment. Plaintiff alleged that the discrimination was ongoing, but she did not assert in her July 2024 EEOC charge that it was so severe or pervasive that she believed she would have to resign from her job. She did not later amend or supplement her charge to include a constructive discharge claim, which could not have arisen until almost four months later. The undersigned finds that the constructive discharge claim is not within the scope of the EEOC charge, so any claim for constructive discharge under Title VII or the ADA should be dismissed without prejudice for failure to exhaust administrative remedies before filing suit. KTBS also argues that Plaintiff has not pled adequate facts to state a plausible constructive discharge claim, but that argument need not be addressed; failure to exhaust is dispositive of the claim.

**FMLA Claims**

### A. Eligibility Arguments

Plaintiff asserts claims of FMLA retaliation and interference. An FMLA interference claim requires a showing that the plaintiff was an eligible employee who was entitled to leave. Caldwell v. KHOU-TV, 850 F.3d 237, 245 (5th Cir. 2017). Similarly, an FMLA retaliation claim includes a requirement that the plaintiff plead that she was protected under the FMLA. Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F.3d 574, 583 (5th Cir. 2006).

KTBS argues that Plaintiff's FMLA claims should be dismissed because Plaintiff has not adequately alleged eligibility for protection under the Act by (1) working at KTBS a sufficient length of time or (2) having a serious health condition. Plaintiff's FMLA claims

do fail to state a plausible claim, but not for these reasons. These two preliminary challenges will be discussed briefly before turning to the particular claims.

KTBS argues that any FMLA claims based on actions taken before October 2024 must be dismissed because, until then, Plaintiff was not FMLA eligible. KTBS points to 29 U.S.C. § 2611(2)(A), which defines an eligible employee as one who has been employed for at least 12 months by the employer and for at least 1,250 hours of service during the previous 12 months. Plaintiff alleged in her complaint that she began working for KTBS in October 2023 and "requested medical leave" (less than 12 months later) in July 2024. She eventually resigned in November 2024 "while still on medical leave."

The problem with this challenge is that Plaintiff does not complain that she was denied leave during that timeframe. Rather, she alleged in her complaint that KTBS granted her request for "medical leave." Plaintiff wrote in her resignation letter that HR "placed me on FMLA without my permission," to which she objected. An employer such as KTBS may be equitably estopped from asserting a non-eligible employee coverage defense if it makes an erroneous representation to an employee that she is eligible and entitled to leave under FMLA and has reason to believe that the employee will rely upon it. Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352 (5th Cir. 2006). It cannot be determined at this pleadings-review stage whether KTBS may have a valid non-eligible employee argument or whether it is subject to equitable estoppel.

KTBS next argues that Plaintiff's allegations of anxiety, depression, and panic disorder are not sufficient to allege a "serious health condition" that might entitle her to FMLA leave under 29 U.S.C. § 2612(a)(1)(D). Such conditions may or may not rise to

that level, depending on factors such as whether the employee required inpatient care or continuing treatment by a health care provider.  See 29 U.S.C. § 2611(11) and 29 CFR § 825.113-115 (defining serious health condition) and Holland v. Texas Christian Univ., 2025 WL 2588997 n.1 (5th Cir. 2025) (applying regulations on review of summary judgment to assess whether chronic depression qualified).  Plaintiff has alleged sufficient facts about her health conditions to survive mere Rule 12(b)(6) review.  Furthermore, KTBS might be subject to an estoppel plea on this eligibility issue if it treated Plaintiff as if she were eligible for FMLA leave during her employment.

### B.  FMLA Interference

"The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from a serious health condition that makes the employee unable to perform the functions of the position of such employee."  Caldwell v. KHOU-TV, 850 F.3d at 245 (cleaned up).  It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA.  29 U.S.C. § 2615(a)(1).

Plaintiff asserts a claim that KTBS interfered with her FMLA rights.  To prove an interference claim, a plaintiff must at least show that the employer interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights and that the violation prejudiced her.  Acker v. General Motors, LLC, 853 F.3d 784, 788 (5th Cir. 2017).  The claim requires proof that the employer denied the employee her entitlements under the FMLA.  Id.

Plaintiff bases her interference claim on the allegations that an HR representative "repeatedly contacted me by text and email about work and insurance" and told Plaintiff that she was "responsible for paying premiums" on her health insurance. Plaintiff was allegedly also required to report weekly whether her medical condition had changed. Plaintiff asserts that this "interfered with my FMLA rights and increased my anxiety."

Federal regulations provide that "[a]n employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." 29 C.F.R. § 825.311(a). The FMLA may entitle an employee to 12 weeks of unpaid leave, but "nothing in the FMLA indicates it ensures 12 workweeks of *undisturbed* leave." Salem v. City of Port St. Lucie, 788 Fed. Appx. 692, 695 (11th Cir. 2019). To the contrary, the regulation quoted above expressly allows an employer to contact an employee while she is on FMLA leave to discuss her status. Id. See also Mezu-Chukwu v. Mercy Health Physicians Youngstown, LLC, 2026 WL 554541, *4 (N.D. Ohio 2026) (allegation that two text messages from manager while on leave caused emotional distress was insufficient under Twombly to state an actionable interference claim); Wilson v. The Board of Education for the City of Marietta, 2025 WL 4464163, fn. 6 (N.D. Ga. 2025) (allegation that HR called multiple times and pressured the employee to return to work insufficient to state a claim for interference); and Vinson v. Grinnell, 2023 WL 12199235, *4 (M.D. Fla. 2023) (no interference claim when "emails and calls she received, while annoying to Vinson, did not interfere with her leave"). Plaintiff's allegations that she was contacted by KTBS for employment-related communications while on leave (which KTBS never terminated) do not state a plausible claim for interference with any FMLA right.

### C. FMLA Retaliation

Plaintiff also alleges that KTBS retaliated against her for asserting her FMLA rights. To prove FMLA retaliation, the employee must demonstrate (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. Acker, 853 F.3d at 790. The third element requires the employee to show there is a causal link between the FMLA-protected activity and the adverse action. Id.

Plaintiff alleged in her complaint that she requested medical leave, and KTBS placed her on leave that it considered FMLA leave. After a few months, during which KTBS often asked Plaintiff when she would return, Plaintiff resigned and said that she considered herself constructively discharged. Plaintiff does not allege that KTBS took any actions against her related to her FMLA status, other than the communications that were discussed above and found to be lawful. Plaintiff did complain in her resignation letter about breaches of confidentiality, sensitivity to smoke generated by a coworker, and other workplace complaints, but she did not point to any facts to support a plausible claim that KTBS unlawfully retaliated against her based on her FMLA status. The claim for FMLA retaliation should be dismissed.[1]

---

[1] The Fifth Circuit reversed the dismissal of an FMLA retaliation claim when an employee alleged that she exhausted her FMLA-protected leave and was terminated shortly afterward. Luebano v. Off. Depot, L.L.C., 2023 WL 4249268 (5th Cir. 2023). In this case, KTBS did not actually terminate Plaintiff. Plaintiff chose to resign after being subjected to what the court has determined were lawful communications from her employer.

**Title VII Claims**

### A. Religion

Plaintiff contends that she was discriminated against based on her Christian religion in violation of Title VII.  Her relevant allegations are that she informed management in February 2024 that covering a Mardi Gras parade conflicted with her Christian beliefs. KTBS management removed the assignment.  Plaintiff complains, however, that a supervisor called her into his office the next week, questioned her religious beliefs, and tried to convince her that participating in Mardi Gras was not wrong.  Plaintiff does not allege any other religion-based discrimination, and she did not refer to any such discrimination in her letter of resignation.

Title VII prohibits an employer from discriminating against an employee with respect to her compensation, terms, conditions, or privileges of employment on the basis of her religion, unless the employer is unable to reasonably accommodate the employee's religious exercise without undue hardship to his business.  42 U.S.C. §§ 2000e-2(a)(1), 2000e(j).  Plaintiff does not allege that the terms or conditions of her employment were impacted by her religion.  To the contrary, she admits that "the assignment was removed." Her lone complaint is about the discussion with management.

Communication between the employee and employer about a religion-based objection and potential accommodations are an inherent part of the Title VII framework. For starters, an employee who objects to a work assignment based on a religious belief must show that her belief conflicted with a requirement of her employment and that she

Page 12 of 30

informed her employer of her belief.  Tagore v. U.S., 735 F.3d 324, 329 (5th Cir. 2013).  The employer must then assess whether the objection can be reasonably accommodated.

A case that demonstrates this type of communication is Bruff v. N. Mississippi Health Servs., Inc., 244 F.3d 495 (5th Cir. 2001), where a counselor/employee objected to counseling homosexual clients.  The employer met with the counselor to discuss her objections and asked her to put in writing exactly what aspects of her counseling responsibilities from which she wanted to be excused.  The Fifth Circuit looked at the burdens that accommodation would place on the employer and ultimately agreed with the employer that the employee's request for accommodation did not have to be granted.

Plaintiff has pointed to no law that prohibits an employer from having a discussion with an employee who raises a religious objection to a work assignment.  Cases such as Tagore and Bruff demonstrate that a discussion with an employee about a religion-based objection to a job assignment is contemplated (not prohibited) by the accommodation framework.  Shreveport has three major Mardi Gras parades each year (and other small ones) that receive significant media coverage, so it is understandable that management would want to discuss with Plaintiff the potential need to accommodate her religious objection, even though she had been excused from covering the most recent parade.

Plaintiff alleged that she "experienced this (the meeting with her supervisor) as coercive and discriminatory," but she did not allege any particular *facts* about the events at the meeting that could plausibly support such a claim.  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations" but must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Twombly, 127 S.Ct. at 1964-65. Plaintiff's conclusory allegation of her subjective view of the meeting is not sufficient to plead an actionable claim. All Title VII claims for religion-based discrimination should be dismissed.

### B. Race

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's race. 42 U.S.C. § 2000e-2(a)(1). To plead a disparate-treatment claim under Title VII, a plaintiff must allege facts plausibly showing (1) an adverse employment action (2) taken against the plaintiff because of her protected status. Hamilton v. Dallas County, 79 F.4th 494, 502 (5th Cir. 2023) (en banc). In Hamilton, the Fifth Circuit did away with its prior requirement that a plaintiff show an "ultimate employment decision." The Court acknowledged that Title VII does not permit liability for "de minimis workplace trifles," but it declined to address "the precise level of minimum workplace harm" necessary to sustain a discrimination claim. The Supreme Court later said in Muldrow v. City of St. Louis, 144 S.Ct. 967 (2024), in the context of a discriminatory transfer, that the employee need not satisfy any "significance test" but must show "some harm" from the forced transfer. See Smith v. Kendall, 2024 WL 4442040, *5 (5th Cir. 2024).

Plaintiff alleged that she pitched and received approval for a Black History Month story on a local restaurant, after which a manager began targeting her work and subjecting her scripts to unusual scrutiny, rewrites, and negative treatment. Plaintiff alleged that this increased scrutiny was "not imposed on white reporters." She also alleged that she "faced

racial microaggressions and was labeled 'difficult' and 'overly sensitive.'"  Plaintiff's complaint is accompanied by 100 pages of exhibits that include various communications between her and management about workplace events and scrutiny that she attributes to her race, each of which management vigorously contested in responses.  For example, Plaintiff alleged that there was selective enforcement of script approval rules and an escalation of a newsroom-wide policy immediately after Plaintiff complained.  She also alleges that Bill Lunn demoted her from anchor duties to reporter-only.

Some of Plaintiff's allegations with respect to this claim are conclusory, but the court finds that she has alleged enough facts to survive Rule 12(b)(6) review.  The precise contours of Hamilton and Muldrow have not been fleshed out, but it appears that Plaintiff's allegations of additional scrutiny, special approval requirements, and change in duties (based on her race) are sufficient to state a plausible claim of Title VII race discrimination that must be tested by more substantive means such as a motion for summary judgment or tiral.  KTBS's motion to dismiss should be denied with respect to this claim.

## C. Retaliation

Plaintiff alleged in her complaint that she filed a grievance with HR for harassment and discriminatory treatment.  Shortly afterward, she was allegedly subjected to additional scrutiny and the other acts described above.  Her complaint described certain events as "retaliatory" or "retaliation," and she listed retaliation among the forms of discriminatory conduct about which she complained.  Plaintiff alleged that KTBS's actions "made clear that my protected complaints would result in increased scrutiny instead of protection." Doc. 1, pages 4-6, 8 & 11.

KTBS did not specifically attack a Title VII retaliation claim in its motion to dismiss. Plaintiff's memorandum in opposition listed such a claim as among those asserted. In reply, KTBS argued that Plaintiff's complaint did not adequately invoke a Title VII retaliation claim. It is true that Title VII retaliation is missing from a long list of legal claims found on page 12 of Plaintiff's complaint (Title VII race and religious discrimination are listed), but a plaintiff need not specifically invoke a statute if her complaint otherwise sets forth factual allegations sufficient to survive a motion to dismiss. Johnson v. City of Shelby, 135 S.Ct. 346 (2014). Considering Plaintiff's pro se status and her complaint's frequent references to retaliation, the court finds that Plaintiff has adequately invoked Title VII retaliation as a potential claim.

Turning to the merits of the retaliation claim, it is an unlawful employment practice for an employer to discriminate against an employee because she "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). A pro se plaintiff in Daniels v. LAZ Parking, 2026 WL 781322 (5th Cir. 2026) obtained a reversal of the district court that dismissed his Title VII retaliation claim. His complaint alleged that he reported harassment to human resources and was then terminated in response to his report. The Fifth Circuit said, "At this early stage, alleging that protected activity led to his termination is sufficient." Plaintiff has alleged that her protected activity led to unfavorable workplace actions and duty changes. KTBS's motion to dismiss her Title VII retaliation claim should be denied.

**ADA Claims**

### A. Discrimination

Plaintiff's complaint invoked certain claims under the ADA. Title I of the ADA prohibits employment discrimination against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To plead a case of ADA Title I disability discrimination, a plaintiff must allege "a disability, that he was qualified for his position, and that he suffered an adverse employment action because of his disability." Olivarez v. T-mobile USA, Inc., 997 F.3d 595, 600 (5th Cir. 2021).

KTBS argues that Plaintiff has not alleged a plausible claim for ADA discrimination because she did not plead facts that show she suffers from a disability. The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to, performing manual tasks, walking, speaking, concentrating, thinking, communicating, and working. § 12102(2)(A).

Plaintiff's health conditions for which she allegedly requested accommodations include anxiety and panic disorder. KTBS notes that Mann v. Louisiana High Sch. Athletic Ass'n, 535 Fed. Appx. 405, 411-12 (5th Cir. 2013) stated that a diagnosis of anxiety disorder "is insufficient, standing alone," to support a finding that a plaintiff is disabled under the ADA. But the court added that it did not hold that anxiety disorders can never be a disability under the ADA, only that Mann did not meet his burden.

Plaintiff in this case attached as an exhibit to her complaint a medical form completed by a physician who diagnosed an impairment of anxiety and trouble concentrating. The physician identified concentrating, sleeping, and working as major life activities that suffered substantial limitations as a result. The physician spoke to how this would affect Plaintiff's ability to talk on the news floor and stated that an inconsistent work schedule made it difficult for Plaintiff to perform her job, which required thinking on her feet and concentrating. Driving for more than 20 minutes was also restricted. As noted above, an exhibit to a complaint is a part thereof for purposes of assessing a Rule 12(b)(6) challenge. These allegations, at the pleadings review stage, are sufficient to allege a plausible basis that Plaintiff had an ADA disability.

KTBS argues that it is inconsistent for Plaintiff to allege that she is disabled under the ADA (which requires the ability to perform the functions of the job with accommodation) and claim entitlement to FMLA leave (which requires the inability to perform the functions of the position). "Thus, an employee seeking FMLA leave is by nature arguing that he *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he *can* perform the essential functions of the job." Acker, 853 F.3d at 791-92.

This argument, at least at this preliminary stage of the case before the facts are fully developed, is not dispositive of Plaintiff's ADA claims. Plaintiff does not allege that KTBS denied her FMLA leave. She does allege that KTBS afforded her medical leave (which KTBS treated as FMLA leave), and "[t]ime off, whether paid or unpaid, can be a reasonable accommodation" for an ADA disability. Moss v. Harris Cnty. Constable Precinct One,

851 F.3d 413, 418 (5th Cir. 2017).   Thus, Plaintiff being granted leave, whether characterized as FMLA or other, is not wholly incompatible with Plaintiff asserting an ADA claim.  Also, an employee may require FMLA leave (up to 12 weeks) for a temporary or intermittent condition that may not rise to the level of a disability under the ADA. Accordingly, Plaintiff's invocation of FMLA claims for interference and retaliation (for which dismissal has been recommended) are not necessarily inconsistent with the assertion of her ADA claim.

KTBS also alleges that Plaintiff has not alleged an adverse employment action to support a claim of ADA discrimination.  Plaintiff alleged that she raised her disability concerns in a March 4 grievance (discussed below in ADA Retaliation) and afterward was subjected to changes in how she was managed and supervised as she performed her job. The complaint, when read in the light most favorable to the pro se plaintiff, adequately alleges adverse employment action based on disability status. Plaintiff's ADA discrimination claim should survive the motion to dismiss.

## B.  Failure to Accommodate

Plaintiff alleged that she requested ADA accommodation in the form of a consistent schedule and transfer to an evening shift as recommended by her physician.  She alleged that KTBS responded that she could either remain on her "stressful schedule" or accept a "demotion" to reporter only.  KTBS argues that the claim should be dismissed because Plaintiff did not have a disability (rejected above) and did not allege that she could perform the essential functions of her job with the requested accommodation.

It was implicit in Plaintiff's description of her request for accommodation that she contends she could perform the job with those changes.  Her complaint was not required to explain this in any greater detail.  It has set forth a short and plain statement of a plausible ADA failure to accommodate claim that will have to be tested by more substantive means. KTBS' motion to dismiss this claim should be denied.

### C. Retaliation

The ADA retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).  A retaliation claim has three elements: (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action.  Strife v. Aldine Indep. Sch. Dist., 138 F.4th 237, 249 (5th Cir. 2025).

KTBS argues that Plaintiff has not alleged an ADA retaliation claim.  It acknowledges Plaintiff's allegation that she filed a grievance with human resources on March 4, 2024 for harassment and discriminatory treatment, but it argues that a complaint about harassment unconnected to a disability is not an ADA protected activity.  Among the exhibits to Plaintiff's complaint is her EEOC charge, which alleged that the March 4 grievance was "for race, *disability* and religious discrimination," which covers the protected activity element.  (Emphasis added.)  Plaintiff has adequately alleged that submission of the grievance that raised disability discrimination resulted in adverse employment action, and her complaint depicts a temporal connection that is adequate to

imply a causal connection.  KTBS's motion to dismiss should be denied with respect to this claim.

**Invasion of Privacy/Breach of Confidentiality**

Plaintiff alleged in her complaint that KTBS disclosed the filing of Plaintiff's EEOC complaint to one of Plaintiff's coworkers, who "spread this information around the newsroom."  Plaintiff alleged that this was a violation of her privacy, and her complaint lists a count titled Invasion of Privacy/Breach of Confidentiality.

KTBS argues that this claim lacks any legal basis.  Title VII states that "[c]harges shall not be made public by the Commission."  42 U.S.C. § 2000e-5(b).  There does not appear to be a similar prohibition against disclosure by the employer.  Louisiana law recognizes a limited right of privacy, but it is actionable only when the defendant's conduct is unreasonable and seriously interferes with the Plaintiff's privacy interest.  Jaubert v. Crowley Post-Signal, Inc., 375 So. 2d 1386, 1389 (La. 1979).  It does not appear that Jaubert has been applied to hold that an employer may not disclose that an employee filed a workplace grievance or EEOC charge.

The court finds that Plaintiff has not shown a legal basis for a federal or state law claim based on the mere disclosure of a grievance or charge.  The standalone claim for Invasion of Privacy/Breach of Confidentiality should be dismissed.  This does not mean that Plaintiff cannot use the fact of the disclosure in an effort to support her retaliation claims, discussed above.

**Hostile Work Environment**

Plaintiff's complaint lists ten specific counts, with most invoking a particular federal law such as Title VII or the ADA.  One count is a generic assertion of "Hostile Work Environment" with no indication of whether it is based on Title VII (race or religion), the ADA (disability), or other form of alleged harassment.  Doc. 1, p. 12.  The only indications of such a claim within the body of the complaint are Plaintiff's allegation that she filed the March 4, 2024 grievance "for harassment and discriminatory treatment," that HR's disclosure of her complaints to a coworker "worsened the hostile work environment," and that KTBS management "failed to stop the harassment" in the workplace.

KTBS's motion to dismiss attacked any hostile work environment claim that Plaintiff might be asserting.  Plaintiff's memorandum responded by pointing to her general allegations discussed above, plus certain emails.  She alleged that a February 16 email from Ms. Welborne claimed that only news managers could approve scripts; Plaintiff replied to Ms. Welborne that other colleagues had used the same practice without reprimand and that Plaintiff felt "singled out, targeted, and bullied."  Plaintiff alleged that, days later, Mr. Lunn issued a script approval policy for the entire newsroom, which Plaintiff characterized as a "targeted escalation" after Plaintiff complained about discriminatory enforcement and harassment.  Finally, Plaintiff argued that hostility included "condescending, demeaning communications" about her competence that were issued soon after she filed her HR grievance.  She has yet to specify the nature of the alleged harassment that supports the hostile work environment claim.

Claims for hostile work environment are based on statutory language in legislation such as Title VII and the ADA that prohibit discrimination with respect to an employee's "terms, conditions, or privileges of employment" based on an unlawful reason such as race, religion, or disability. Meritor Sav. Bank, FSB v. Vinson, 106 S. Ct. 2399 (1986) (recognizing a Title VII claim for HWE based on sexual harassment); Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 233 (5th Cir. 2001) (recognizing an ADA claim for disability-based HWE). The ADA and Title VII include that language, but a statute such as USERRA, which did not, does not permit a claim for hostile work environment. Carder v. Cont'l Airlines, Inc., 636 F.3d 172 (5th Cir. 2011). Thus, Plaintiff cannot assert a generic or common law claim of hostile work environment. Her failure to specify a statutory basis and form(s) of discrimination her claim is based on makes it difficult for the court to assess her claim and weakens her argument that she has such a claim.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." Wantou v. Wal-Mart Stores Texas, L.L.C., 23 F.4th 422, 433 (5th Cir. 2022). To succeed, the plaintiff must show that (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Bye v. MGM Resorts Int'l, Inc., 49 F.4th 918, 923 (5th Cir. 2022).

Harassment generally takes the form of "discriminatory intimidation, ridicule, and insult" that rises to the level of "hostile or abusive." Clark v. City of Alexandria, 116 F.4th

472, 479 (5th Cir. 2024), quoting <u>Harris v. Forklift Sys., Inc.</u>, 114 S.Ct. 367 (1993).  For harassment to affect a term, condition, or privilege of employment, it must be sufficiently "severe or pervasive" to alter the conditions of the victim's employment and create an abusive working environment.  <u>Wantou</u>, 23 F.4th at 433.  "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."  <u>Shepherd v. Comptroller of Pub. Accounts</u>, 168 F.3d 871, 874 (5th Cir. 1999).

The court considers the totality of the employment circumstances to determine whether a work environment was objectively hostile.  <u>Clark</u>, 116 F.4th at 479.  Relevant considerations include (1) the frequency of discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  <u>Id</u>.

The <u>Clark</u> decision was a review of the grant of summary judgment for the employer, but the court's rejection of the hostile work environment claim is nonetheless instructive in this Rule 12(b)(6) contest.  A black police officer claimed that white officers received better positions, uniforms, and equipment than black officers, that white officers were punished less severely, that a supervisor's demotion was overturned after he called an employee "monkey boy," and that racial bias led to the circumvention of the employees' commands.  The plaintiff also alleged that supervisors allowed other officers to verbally attack him in their presence, a supervisor looked at the employee during a meeting in a "harassing way," and the employee had been terminated for activity for which other officers received only a day's suspension.  Despite all of those facts, which were much

more egregious than what is alleged in this case, the Fifth Circuit found no reason to overturn the district court's grant of summary judgment to the employer.

Guidance can also be found in Saketkoo v. Adm'rs of Tulane Educ. Fund, 31 F.4th 990 (5th Cir. 2022), where a female physician asserted claims of gender discrimination and hostile work environment under Title VII.  The district court granted summary judgment. On appeal, the plaintiff attempted to support her hostile work environment claim by pointing to various incidents of abrasive conduct that took place over the course of four years.  She alleged incidents that included when her supervisor Dr. Lasky (1) cut her off and told her it was "not her place" to discuss the needs of the clinic; (2) flailed his arms and yelled "I'm sick of this!" when she inquired about the use of funds; (3) hovered over her and shouted "I already told you what it was!" while documenting heart catheterization results; (4) mockingly asked her if she had "danced away scleroderma," upon which he interrupted, "We don't need you thinking! We need you working."; and (5) chastised her for teaching an undergraduate class, telling her to "[s]top it now!"  The Fifth Circuit affirmed summary judgment with the observation that it has "routinely held that similar sporadic and abrasive conduct is neither severe nor pervasive."  Id. at 1003-04.

In another example, which arose in the context of a motion to dismiss, the complaint alleged two instances of ADA "harassment": (1) the employer's refusal to immediately grant the employee's accommodation request and (2) the employer's insistence that the employee undergo an independent medical exam.  The Fifth Circuit stated that, granting all reasonable inferences in the plaintiff's favor, those allegations did not allege the employer engaged in a process that was so pervasive or severe as to create an abusive

working environment.  Strife v. Aldine Indep. Sch. Dist., 138 F.4th at 248.  The Court noted that "a disagreement with an employer over terms of employment or an accommodation do[es] not amount to harassment."  Id., quoting Clark v. Champion Nat'l Sec., Inc., 952 F.3d 570, 585 (5th Cir. 2020).  The district court's dismissal of a hostile work environment claim was affirmed.

Plaintiff has not alleged facts to set forth a plausible claim of hostile work environment, whether based on race, religion, or disability.  She alleged rejection of a story idea, changes in workplace policies, denial of certain requests, and similar workplace disagreements.  She did not allege that any KTBS employee used epithets or made objectively threatening or humiliating statements, nor did she describe the sort of outrageous actions that typically must exist to support an actionable hostile work environment claim.

She instead described fairly routine workplace communications and events, some of which involved disagreements, but none of which were particularly outstanding or offensive.  Plaintiff may have subjectively viewed these workplace incidents as discriminatory or harassing, but her allegations do not objectively describe any activity that was so pervasive or severe as to alter the terms or conditions of her employment and create an abusive work environment.  KTBS's motion to dismiss should be granted with respect to this claim.

**No Amendments**

Plaintiff's memorandum in opposition ends with a request that KTBS's motion to dismiss be denied or, alternatively, Plaintiff be allowed leave to amend her complaint.

Plaintiff's sur-reply ends with a similar request, but neither memorandum suggested the particulars of any amendment Plaintiff wanted to offer. As explained below, Plaintiff had a full and fair opportunity to amend her complaint and attempt to cure the deficiencies urged by KTBS before the court assessed the motion to dismiss. She did not take advantage of that opportunity, and it is now too late to do so.

KTBS responded to Plaintiff's complaint with its motion to dismiss. Federal Rule of Civil Procedure 15 generally allows a plaintiff to amend her complaint once without leave of court if she does so within 21 days after service of a Rule 12(b) motion. The Advisory Committee notes to the 2009 amendments to Rule 15(a) explain that the rule encourages amendments to meet the arguments raised in a motion to dismiss. A responsive amendment may avoid the need to decide the motion to dismiss or reduce the number of issues to be decided, and it will avoid the waste of time that accompanies requests to amend and start over after the court has taken the time to rule on a motion to dismiss. Davis v. Gavin, 2019 WL 2754758, *1 (W.D. La. 2019).

Plaintiff, after being served with the motion to dismiss, filed a Motion to Amend Complaint (Doc. 17) that asked for the opportunity to cure by an amended complaint any deficiencies in her original complaint. The court issued an order (Doc. 18) that denied the motion without prejudice because it was not supported by a proposed amended complaint. Plaintiff was allowed 14 days to file another motion to amend that was supported by a proposed amended complaint. The order described in detail what Plaintiff needed to do if she wished to file an amended complaint. The order also stated that if Plaintiff did not file a new motion to amend by the deadline, then she must file a memorandum in opposition to

the motion to dismiss. Plaintiff did not take advantage of the opportunity to amend her complaint; she instead elected to file a memorandum in opposition.

The court has now spent a considerable amount of time assessing which of Plaintiff's multiple claims should survive the motion to dismiss. To allow an amendment now and essentially start the process anew would result in an extraordinary waste of the court's resources. Plaintiff could have easily taken advantage of the opportunity afforded to her by Rule 15 and the court's order to amend before the motion to dismiss was addressed. Plaintiff made a choice to stand on her original complaint, and she must now live with the consequences.

This may seem like a long discussion about a proposed amendment that has not been offered, but it is based on experience. Plaintiffs, particularly those who are pro se, often fail to take advantage of the opportunity to amend their complaint, even when prodded to do so, before a motion to dismiss is taken up by the court. Within days of a Report and Recommendation, they ask to make wholesale amendments to their complaint, and the requests are ordinarily denied based on authorities such as McKinney v. Irving ISD, 309 F.3d 308, 315 (5th Cir. 2002) (denial of leave to amend affirmed where plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment") and Scott v. U.S. Bank, 16 F.4th 1204 (5th Cir. 2021) (denial of leave to amend affirmed when plaintiff's memorandum in opposition made a generic request to amend but did not explain how deficiencies in his complaint

Page 28 of 30

would be corrected). Perhaps this discussion will discourage this plaintiff from pursuing such a time-wasting path.

Accordingly,

It is recommended that KTBS' Motion to Dismiss (Doc. 15) be granted in part by dismissing Plaintiff's claims for constructive discharge, FMLA interference, FMLA retaliation, Title VII religious discrimination, invasion of privacy/breach of confidentiality, and hostile work environment. The motion should be denied with respect to Plaintiff's claims of ADA discrimination, ADA failure to accommodate, ADA retaliation, Title VII race discrimination, and Title VII retaliation.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of April, 2026.

Mark L. Hornsby
U.S. Magistrate Judge