**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **CHELSIE BURROUGHS** | **CIVIL ACTION NO.: 5:25-cv-01933** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **KTBS, LLC** | **MAGISTRATE JUDGE HORNSBY** |

**DEFENDANT KTBS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Respectfully submitted,

COOK, YANCEY, KING & GALLOWAY
*A Professional Law Corporation*

By: s/ *Elizabeth M. Carmody*
Elizabeth Mendell Carmody, #25792
Luke D. Whetstone, #37355

333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA 71120-2260
Telephone: (318) 221-6277
Facsimile: (318) 227-7850
elizabeth.carmody@cookyancey.com
luke.whetsone@cookyancey.com

ATTORNEYS FOR DEFENDANT,
KTBS, LLC

# TABLE OF CONTENTS


I. Standard of Review. .......... 2

II. Objection One: The R & R Erred in Reading a Title VII Retaliation Claim into the Complaint, and, If Read In, that Claim Should Be Dismissed on the Merits. .......... 2

A. The Complaint Does Not Plead Title VII Retaliation. .......... 2

B. Even If a Title VII Retaliation Claim is Read In, the Editorial-Scrutiny Allegations Do Not State One. .......... 3

C. The Four-Hour Pay-Deduction Allegation Does Not Salvage the Claim .......... 7

III. Objection Two: Burroughs Does Not Plausibly Plead a Title VII Race Discrimination Claim. .......... 9

A. The R&R Credited Burroughs' Conclusory Labels Despite the Absence of Any Underlying Facts. .......... 10

B. The Conduct Alleged Is *De Minimis* Workplace Trifles, Not Actionable Discrimination. 12

C. The Newsroom-Wide Script-Approval Policy Cannot Plausibly Be "Because of Race." 13

D. The Allegation of Differential Treatment of "White Reporters" Is Conclusory. .......... 13

IV. Objection Three: Burroughs Fails to State a Plausible ADA Discrimination Claim. .......... 14

A. Burroughs Does Not Plausibly Plead She Is a "Qualified Individual." .......... 14

B. The Complaint Pleads No Adverse Employment Action Tied to Disability. .......... 15

V. Objection Four: Burroughs Fails to State a Plausible ADA Failure-to-Accommodate Claim. .......... 16

A. The R&R Improperly Supplied a Pleading Element by "Implication." .......... 16

B. KTBS Provided the Requested Accommodation. .......... 177

C. The Complaint Pleads No "Consequential Limitations" Known to KTBS. .......... 17

VI. Objection Five: Burroughs Fails to State a Plausible ADA Retaliation Claim. .......... 17

A. The March 4 Grievance Was Not ADA Protected Activity. .......... 188

B. No Adverse Employment Activity Is Causally Connected to ADA Activity. .......... 18

VII. KTBS Does Not Object to, and Urges Adoption of, the Portions of the R&R that Grant the Motion to Dismiss. ........ 19

VIII. Conclusion. ........ 20

## TABLE OF AUTHORITIES

### Cases

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017). .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 2, 3, 9, 10, 11, 12, 14, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 2, 9, 12, 16

*Daniels v. LAZ Parking Mid-Atl., L.L.C.*, No. 25-30222, 2026 WL 781322 (5th Cir. Mar. 2026) .......... 6

*Davis v. Dallas Indep. Sch. Dist*., 448 F.App'x 485 (5th Cir. 2011) .......... 5, 7, 8, 18

*E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462 (5th Cir. 2009) .......... 15, 17

*EEOC v. Rite Way Service, Inc.*, 819 F.3d 235 (5th Cir. 2016) .......... 5

*EEOC v. Simbaki, Ltd.*, 767 F.3d 475 (5th Cir. 2014) .......... 10

*Feist v. La. Dep't of Justice*, 730 F.3d 450 (5th Cir. 2013) .......... 16

*Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426 (5th Cir. 2015) .......... 5, 18

*Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) .......... 6, 7, 9, 13, 14

*Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427 (5th Cir. 2023) .......... 6, 9, 13

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) .......... 3

*Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298 (5th Cir. 2020) .......... 19

*Mann v. La. High Sch. Athletic Ass'n*, 535 F.App'x 405 (5th Cir. 2013) .......... 17

*Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874 (5th Cir. 2003) .......... 8

*McKinney v. Irving I.S.D.*, 309 F.3d 308 (5th Cir. 2002) .......... 20

*Moler v. Wells*, 18 F.4th 162 (5th Cir. 2021) .......... 10

*Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F.App'x 295 (5th Cir. 2012) .......... 17

*Moss v. Harris County Constable Precinct One*, 851 F.3d 413 (5th Cir. 2017) .......... 14

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) .......... 6, 7, 9, 12, 13, 16, 18

*Newbury v. City of Windcrest*, 991 F.3d 672 (5th Cir. 2021) .......... 4

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) .......... 12

*Raj v. Louisiana State Univ.*, 714 F.3d 322 (5th Cir. 2013) .......... 13, 14

*Scott v. U.S. Bank, N.A.*, 16 F.4th 1204 (5th Cir. 2021) .......... 20

*Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237 (5th Cir. 2025) .......... 6, 13, 16, 17, 18

*Taliaferro v. Lone Star Implementation & Electric Corp.*, 693 F.App'x. 307 (5th Cir. 2017) .......... 6

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) .......... 2, 3, 10

*Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155 (5th Cir. 1996) ..... 17

*Thompson v. Microsoft Corp.*, 2 F.4th 460 (5th Cir. 2021) ..... 16, 17

*Tratree v. BP North Amer. Pipelines, Inc.*, 277 F. App'x 390 (5th Cir. 2008) ..... 5, 8

*Turner v. Baylor Richardson Medical Center*, 476 F.3d 337 (5th Cir. 2007) ..... 6

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004) ..... 2, 13, 16, 18

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ..... 8, 9

*Way v. City of Missouri City*, 133 F.4th 509 (5th Cir. 2025) ..... 19

**Rules**

Fed. R. Civ. P. 10 ..... 6

Fed. R. Civ. P. 72 ..... 4, 5

**Codes**

28 U.S.C. §636 ..... 4, 5

42 U.S.C. § 2000e-3 ..... 10

MAY IT PLEASE THE COURT:

Pursuant to 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), Defendant KTBS, LLC ("KTBS") respectfully submits these timely objections to the Report and Recommendation issued on April 14, 2026 ("R&R") [Doc. #24].[1] The Magistrate Judge correctly recommended that six of *pro se* plaintiff Chelsie Burroughs' ("Burroughs") ten asserted claims be dismissed: (i) constructive discharge (Title VII/ADA), (ii) FMLA interference, (iii) FMLA retaliation, (iv) Title VII religious discrimination, (v) invasion of privacy/breach of confidentiality, and (vi) hostile work environment. KTBS does not object to these portions of the R&R and respectfully urges the District Court to adopt them.

KTBS objects, however, to the portions of the R&R denying its Rule 12(b)(6) Motion to Dismiss with respect to (1) Burroughs' Title VII race discrimination claim, (2) a Title VII retaliation claim that the R&R reads into the Complaint *sua sponte*, (3) her ADA discrimination claim, (4) her ADA failure-to-accommodate claim, and (5) her ADA retaliation claim. As shown below, accepting Burroughs' well-pleaded factual allegations and all exhibits attached to her Complaint as true - as the R&R purported to do - the Complaint does not state a plausible claim under any of these theories. The Court should reject the R&R as to these five claims, sustain the objections, and dismiss the Complaint in its entirety with prejudice. *See* Fed. R. Civ. P. 72(b)(3) (district court must determine *de novo* any part of the magistrate judge's recommendation that has been properly objected to).

[1] On April 23, 2026, the Court granted KTBS' Motion for Extension of Time to File Objections to Report and Recommendation [Doc. #25] and issued an Order [Doc. #26] extending KTBS' deadline to and including May 5, 2026.

## I. Standard of Review.

The District Court reviews de novo any portion of a magistrate judge's report and recommendation to which a party properly objects. 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). On a Rule 12(b)(6) review, the Court accepts well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Although pleadings filed by *pro se* litigants are construed liberally, the liberal-construction rule does not relieve the plaintiff of the obligation to plead facts that nudge each cause of action across the line from conceivable to plausible. *See id.*; *see also Iqbal*, 556 U.S. at 678–80. The Court may consider exhibits attached to the Complaint at this stage; those exhibits, when they contradict allegations in the body of the Complaint, control. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004); Fed. R. Civ. P. 10(c).

## II. Objection One: The R & R Erred in Reading a Title VII Retaliation Claim into the Complaint, and, If Read In, that Claim Should Be Dismissed on the Merits.

### A. <u>The Complaint Does Not Plead Title VII Retaliation.</u>

The R&R acknowledges that "Title VII retaliation is missing from a long list of legal claims found on page 12 of Plaintiff's complaint." R&R [Doc. #24], p. 16. Indeed, Burroughs' Complaint at page 12 lists ten enumerated counts, including Title VII race discrimination and Title VII religious discrimination, but does not list a Title VII retaliation count. Complaint [Doc. #1], p. 12 (¶¶34–43). The R&R nevertheless reads such a claim into the Complaint based upon Burroughs' *pro se* status and her "frequent references to retaliation." *Id.*, at p. 16. That is error.

KTBS did not move to dismiss a Title VII retaliation claim because Burroughs did not assert one. *See* KTBS' Reply [Doc. #20], p. 6 ("Plaintiff did not assert a Title VII retaliation claim in her Complaint and it should not be considered."). The Magistrate Judge's reliance on *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam), is misplaced. *Johnson* holds only that a plaintiff need not invoke a particular statute by name when the factual allegations otherwise plead the elements of the claim. *Id.*, at 11–12. *Johnson* does not authorize a court to manufacture a cause of action that the plaintiff affirmatively chose not to plead, particularly where, as here, the plaintiff carefully enumerated her counts and listed Title VII race and religion claims while omitting any Title VII retaliation count. The disparity is meaningful and is properly read as deliberate. *Cf. Iqbal*, 556 U.S. at 681 (court need not credit "legal conclusions").

Even *pro se* plaintiffs are bound by the affirmative scope of the claims they choose to plead. *See Taylor*, 296 F.3d at 378 ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" filed against a *pro se* complaint). The R&R's *sua sponte* expansion of the Complaint to include a previously unasserted Title VII retaliation claim exceeded the permissible bounds of liberal pleading construction under Federal Rule of Civil Procedure 8 and deprived KTBS of any opportunity to address such a claim through the orderly Rule 12 process.

B. Even If a Title VII Retaliation Claim is Read In, the Editorial-Scrutiny Allegations Do Not State One.

Even if a Title VII retaliation claim could be read into the Complaint, that claim fails as a matter of law. To plead Title VII retaliation, a plaintiff must plausibly allege that (1) she engaged in activity protected by Title VII, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Newbury v. City of*

*Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021); *see also* 42 U.S.C. § 2000e-3(a). Burroughs' Complaint fails on all three elements.

First, the R&R does not identify the protected activity it credits as the predicate for Title VII retaliation. The R&R states that Burroughs "alleged in her complaint that she filed a grievance with HR for harassment and discriminatory treatment. Shortly afterward, she was subjected to additional scrutiny and other acts described [purportedly related to her Title VII race discrimination claims]." R&R [Doc. #24], p. 15. In finding that KTBS' Motion to Dismiss should be denied as to any Title VII retaliation claim, the R&R states that, "[p]laintiff alleged that her protected activity led to unfavorable workplace actions and duty changes." *Id.* The R&R assumed that Burroughs engaged in protected activity but never addressed whether Burroughs alleged *facts* sufficient to state that she actually engaged in an activity protected under Title VII. *See id.*, at pp. 15-16.

In her Complaint, Burroughs alleges that she filed a grievance with HR against Vickey Welborn on March 4, 2024, "for harassment and discriminatory treatment." Complaint [Doc. #1], p. 5; *see also id.*, at p. 11. Her March 4-grievance is attached to her Complaint as Exhibit T. See Compl. Exhs. [Doc. #1-2], pp. 21-22, 74-75. In that grievance, Burroughs complains generally about Welborn "yelling" at her (as well as another KTBS employee), "targeting" her, "bullying" her (and a history of Welborn doing this to "people at the station"), "harassing" her, "singl[ing]" her out, being "condescending", and "knit picking." *Id.* Not once in Burroughs' March 4-grievance does she ever mention her race or suggest that Welborn's conduct at issue was related to her race. *See id*. The R&R makes no reference to any facts alleged by Burroughs in her March 4-grievance that would constitute protected activity under Title VII. *See* R&R [Doc. #24], pp. 15-16.

Such a generalized harassment complaint, untethered to any protected characteristic, is not Title VII protected activity. *Davis v. Dallas Indep. Sch. Dist*., 448 F.App'x 485, 493 (5th Cir. 2011) ("a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity"); *Tratree v. BP North Amer. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) (general complaints of "unfair treatment" without stating why the treatment is unfair are not protected activity); *see also Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015) (same principle in ADA context). The Complaint, even read with maximum liberality, does not allege that Burroughs ever complained of race discrimination before the alleged adverse actions occurred. The R&R's reliance on retaliation allegations in the Complaint thus rests on impermissibly conclusory pleading.

In her March 4-grievance, Burroughs does mention her request not to cover the Mardi Gras parade due to her "religious beliefs," that the request was granted and that Lunn questioning her religious beliefs was "out of line." Complaint Exhs. [Doc. #1-2], pp. 21-22, 74-75. However, these comments do not constitute protected activity under Title VII. As explained by the Magistrate Judge in the R&R, "[c]ommunication between the employee and employer about a religion-based objection and potential accommodations are an inherent part of the Title VII framework." R&R [Doc. #24], p. 12.

Whether alleged conduct constitutes "protected activity" is a legal question governed by the requirement that the plaintiff oppose a practice made unlawful by Title VII and hold a reasonable, good-faith belief that the challenged conduct violates the statute. *EEOC v. Rite Way Service, Inc.*, 819 F.3d 235, 240–41 (5th Cir. 2016). Plaintiff's grievance does neither. It does not mention her race—the protected characteristic invoked in this lawsuit—and instead references her religious beliefs in a manner that, even taken as true, does not allege discrimination, harassment,

or any other conduct prohibited by Title VII, as found by the Magistrate Judge in the R&R. R&R [Doc. #24], pp. 12-14. Where the underlying conduct is not actionable under Title VII, a complaint about that conduct is not protected activity. *See Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348–49 (5th Cir. 2007); *Taliaferro v. Lone Star Implementation & Electric Corp.*, 693 F.App'x. 307, 309-10 (5th Cir. 2017). Thus, Burroughs' mention of her requested religious accommodation and Lunn's questions about that belief after the accommodation was granted are not protected activity under Title VII.

Second, the R&R's reliance on *Daniels v. LAZ Parking Mid-Atl., L.L.C.*, No. 25-30222, 2026 WL 781322 (5th Cir. Mar. 2026), is misplaced. *See* R&R [Doc. #24], p. 16. *Daniels* involved a plaintiff who alleged that he reported harassment, was thereafter terminated and his report prompted the decision to terminate him — a paradigmatic adverse employment action. Burroughs alleges no analogous adverse action that survives *Hamilton v. Dallas County*, 79 F.4th 494, 505 (5th Cir. 2023) (*en banc*), and *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). *Hamilton* expressly preserved the rule that Title VII "does not permit liability for *de minimis* workplace trifles." 79 F.4th at 505. *Muldrow* requires "some harm respecting an identifiable term or condition of employment." 601 U.S. at 354–55. The Fifth Circuit has applied that standard in the post-*Hamilton* context to require pleadings of "material," non-*de-minimis* injury. *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430–31 (5th Cir. 2023). The "unusual scrutiny," "rewrites," and being "labeled 'difficult'" that Burroughs alleges (Complaint [Doc. #1], pp. 4-5, 11(¶¶ 9–11)) do not approach that threshold; they reflect ordinary supervisory feedback to a junior journalist, which is by definition not actionable. *See Hamilton*, 79 F.4th at 505; *see also Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 249 (5th Cir. 2025) (post-*Hamilton*/*Muldrow*, plaintiff still must plead "something more than a *de minimis* harm").

Third, the Complaint lacks any allegations supporting causal connection beyond the conclusory statement that scrutiny followed Burroughs' March 4-grievance. In her Complaint, Burroughs refers to a "follow-up meeting" with Bill Lunn, Corey Dixon and George Sirven in March 2024 which she alleges "made clear that my protected complaints *would result* in increased scrutiny instead of protection." Complaint [Doc. #1], p. 5 (emphasis added). Burroughs only alleges that she believed the "increased scrutiny" *would* occur, not that it *did occur*. In fact, the Complaint includes no allegations about any "increased scrutiny" after the March meeting to which she refers. Where, as here, the alleged "protected activity" does not reference any Title VII-prohibited basis, no inference of retaliatory animus can attach. *Davis*, 448 F.App'x at 493.

C. <u>The Four-Hour Pay-Deduction Allegation Does Not Salvage the Claim</u>.

Burroughs' Complaint contains a single allegation of harm that is not *de minimis* under *Hamilton* and *Muldrow*: "After this meeting KTBS improperly deducted four hours from my upcoming paycheck, even though I was a salaried employee and had completed my work. This was retaliatory." Complaint [Doc. #1], p. 5. KTBS acknowledges that loss of compensation is the kind of harm to a "term, condition, or privilege" of employment that *Hamilton* and *Muldrow* reach. *See Hamilton*, 79 F.4th at 503; *Muldrow*, 601 U.S. at 354–55. The pay-deduction allegation, however, still fails to plead a plausible Title VII retaliation claim for three independent reasons.

First, the Complaint affirmatively ties the deduction to a grievance that does not constitute protected activity. The deduction allegedly came "after this meeting" with "this meeting" unmistakably being the "follow-up meeting with Bill Lunn, Corey Dixon, and George Sirven in March 2024" that addressed Burroughs' March 4 grievance. Complaint [Doc. #1], p. 5. As shown in Section II.B above, the March 4 grievance complained only of generic "harassment" by Welborn and contains no reference to race. Complaint Exhs. [Doc. #1-2], pp. 21-22, 74-75. A grievance that

does not invoke any Title VII-protected basis is not Title VII protected activity. *Davis*, 448 F.App'x at 493; *Tratree*, 277 F.App'x at 396. By tying the deduction to the meeting that flowed from a non-protected internal grievance, the Complaint forecloses the very causal chain a Title VII retaliation claim requires.

Second, the post-meeting recap email on which the R&R appears to rely (Complaint Exhs. [Doc. #1-2], pp. 16, 67), in which Burroughs first articulated a race-based complaint and invoked Title VII, by Burroughs' own dating *post-dates* the meeting. The decision to deduct four hours of pay (which Burroughs links to the meeting itself) therefore could not have been caused by a written complaint that Burroughs had not yet sent. Title VII retaliation requires that the protected activity *precede* the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (Title VII retaliation requires proof that retaliation was the "but-for" cause of the adverse employment action); *see also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883–84 n. 6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity"). In fact, Burroughs' Complaint Exhibit P, which she labels as "proof of retaliation- took hours away from me.png," indicates that *she requested* four hours of *unpaid* sick time on March 1, 2024, which was granted on March 6, 2024, two weeks *before* the March 20-meeting referred to in Burroughs' March 26, 2024, "recap" email. *See* Compl. Exhs. [Doc. #1-2], p. 18. The Complaint does not, because it cannot, allege that the decision to deduct four hours of pay was made after Burroughs sent the March 26, 2024, recap email; the Complaint instead expressly grounds the deduction in "this meeting," not in the email that was sent *after* it.

Third, even setting aside the sequencing problem, the Complaint's causation pleading is the kind of conclusory recitation that *Iqbal* and *Twombly* forbid. The Complaint says only "After this meeting KTBS improperly deducted four hours from my upcoming paycheck . . . . This was retaliatory." Complaint [Doc. #1], p. 5. There is no factual content identifying *when* within March 2024 the deduction was made, *who* at KTBS made it, what (if any) basis they offered, or how that decisionmaker is alleged to have known of any race-based complaint. The bare label "retaliatory" is the "threadbare recital" of the third element of a Title VII retaliation claim that *Iqbal* tells courts not to credit. 556 U.S. at 678. The Fifth Circuit demands more even at the pleading stage, particularly where a plaintiff must satisfy *Nassar*'s but-for causation standard. *Nassar*, 570 U.S. at 360. Burroughs' Complaint does not carry that burden.

For these reasons, neither the editorial-scrutiny allegations nor the pay-deduction allegation - alone or together - supports a plausible Title VII retaliation claim. The R&R's recommendation that this claim survive should be rejected.

**III. Objection Two: Burroughs Does Not Plausibly Plead a Title VII Race Discrimination Claim.**

To plead disparate-treatment race discrimination under Title VII, Burroughs must allege facts plausibly showing (1) an adverse employment action (2) taken because of her race. *Hamilton*, 79 F.4th at 502. After *Muldrow*, "some harm with respect to an identifiable term or condition of employment" is required, even if not significant. 601 U.S. at 354–55. The Fifth Circuit has confirmed that "*de minimis* workplace trifles" remain non-actionable under *Hamilton*, and post-*Hamilton* decisions require pleadings of an "adversity" that is "material." *Harrison*, 82 F.4th at 430–32. The R&R erroneously concluded that Burroughs cleared this threshold. R&R [Doc. #24], pp. 14–15.

A. <u>The R&R Credited Burroughs' Conclusory Labels Despite the Absence of Any Underlying Facts.</u>

The R&R's race-discrimination analysis rests almost entirely on Burroughs' own unadorned characterizations of her workplace experience: that her work was subjected to "unusual scrutiny," that she received "negative treatment that other anchors and reporters did not receive," and that she was the target of "racial microaggressions." Complaint [Doc. #1], pp. 4, 11 (¶¶9–14); R&R [Doc. #24], pp. 14–15. These are precisely the kind of bare labels and legal conclusions that *Twombly* and *Iqbal* tell the courts not to credit. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (a complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The R&R itself acknowledges the rule when it observes that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." R&R [Doc. #24], p. 4 (quoting *Taylor*, 296 F.3d at 378). The R&R then declines to apply that rule to the very allegations it credits. Even though courts construe "pro se filings liberally," *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), "even 'pro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief.'" *Moler v. Wells*, 18 F.4th 162, 168 (5th Cir. 2021) (alteration adopted)(quoting *Simbaki*, 767 F.3d at 484).

"Unusual scrutiny." The Complaint never identifies what was "unusual" about the scrutiny. It does not allege how often Burroughs' scripts were reviewed, by whom, on what subjects, against simel is left to do all of the work, and *Iqbal* forbids that. 556 U.S. at 678. Burroughs' own exhibits, in fact, undercut her label: Bill Lunn's February 26, 2024, newsroom-wide email establishes that *every* journalist's scripts are subject to managerial approval. Complaint Exhs. [Doc. #1-2], pp. 19,

71. Where, as here, exhibits attached to the pleadings contradict the conclusory characterization in the complaint, the exhibits control. *Riley*, 355 F.3d at 375.[2]

"Negative treatment." The Complaint never describes what the "negative treatment" actually consisted of. The phrase is not a fact; it is a legal characterization. A Title VII pleading must contain factual content, not just labels, from which the court can draw a reasonable inference of intentional discrimination. *Iqbal*, 556 U.S. at 678. The R&R's recitation of "negative treatment" as if it were a factual allegation reflects the very pleading shortcut *Iqbal* forecloses.

"Racial microaggressions." The Complaint does not identify a single specific statement, gesture, or interaction that Burroughs contends was a racial microaggression. It supplies the label without alleging any facts regarding the underlying conduct. *Iqbal* requires that a plaintiff plead more than "the sheer possibility" of misconduct; the Complaint must set out factual content from which the court can "draw the reasonable inference that the defendant is liable." 556 U.S. at 678. The Complaint's assertions that Burroughs was "labeled 'difficult' and 'overly sensitive'" ([Doc. #1], pp. 4, 11 (¶11)) identify no speaker, no audience, no setting, no frequency, and no factual link to her race, with the exception of one allegation that Lunn sent a written response to her March 4 grievance copied to upper management and Burroughs' agent that she was "sensitive to critiques." Without that factual content, those labels are exactly what *Iqbal* deems insufficient. *Plotkin v. IP*

---

[2]The R&R broadly refers to the "100 pages of exhibits to plaintiff's Complaint that include various communications" between Burroughs and management "about workplace events and scrutiny that she attributes to her race, each of which management vigorously contested in response." R & R [Doc. #24], p. 15. However, the Complaint Exhibits include only 10 non-duplicative pages of email communications upon which Burroughs relies for her race discrimination claim. *See* Compl. Exhs. [Doc. #1-2], Exh. AA (p. 29), Exh. V (pp. 24, 76), Exh. U (pp. 23, 78), Exh. Q (pp. 19, 71), Exh. W (pp. 25, 79), Exh. T (pp. 21-22, 74-75), Exh. AH (pp. 33-36, 82-84) and Exh. N (pp. 16, 67). Burroughs' March 26, 2024-email to Lunn, Dixon and Sirven wherein Burroughs purports to provide a "recap" of a meeting held on March 20, 2024, is the first time she attributes any of her complaints to her race. *See id.*, at Exh. N, pp. 16, 67.

*Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (the court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions").

"Demoted." The Complaint merely alleges that Burroughs was "demoted" from anchor duties to reporter-only. Complaint [Doc. #1], p. 5. The Complaint does not allege a single fact regarding the job responsibilities of one position versus the other or the factual basis for her conclusory statement that she would have to "accept a demotion." As explained above, *Iqbal* requires more.

Stripped of its conclusory labels, the Complaint's race-discrimination claim is left with nothing more than (i) editorial review of scripts that applied to *all* journalists in the newsroom, and (ii) a denial of Burroughs' preferred shift in lieu of two "consistent" schedules that were offered. Neither suffices. The R&R's contrary conclusion was driven by an overly deferential reading of plaintiff's own characterizations, in derogation of *Iqbal* and *Twombly*.[3]

B. <u>The Conduct Alleged Is *De Minimis* Workplace Trifles, Not Actionable Discrimination.</u>

Burroughs' race discrimination claim is built on (i) "unusual scrutiny" of her scripts, (ii) "rewrites", (iii) "negative treatment," (iv) selective enforcement of script-approval rules, (v) the issuance of a newsroom-wide script approval policy, and (vi) being labeled "difficult" or "overly sensitive." Complaint [Doc. #1], pp. 4-5, 11 (¶¶10–14); *see also* R&R [Doc. #24], pp. 14–15. Each of these allegations describes ordinary editorial oversight in a working newsroom. None plausibly inflicts "some harm" to a "term or condition of employment." *Muldrow*, 601 U.S. at 354–55. The

[3]As to Burroughs' Title VII religious discrimination claim, the Magistrate Judge correctly found that Burroughs' subjective view that the post-accommodation meeting with management was "coercive and discriminatory" without "any particular *facts* about the events at that meeting that could plausibly support such a claim" was not sufficient to plead an actionable religious discrimination claim. R & R [Doc. #24], pp. 13-14 (emphasis in original). The same standard of pleading review applies with equal force to the allegations Burroughs relied on to support her Title VII race discrimination claim, but it was not so applied.

Fifth Circuit recognized in *Hamilton* itself that "the days and hours one works are quintessential terms or conditions," 79 F.4th at 503, but heightened editorial scrutiny of an entry-level journalist's scripts is not the kind of harm to a "term, condition, or privilege" of employment that *Hamilton* or *Muldrow* had in mind. *See Strife*, 138 F.4th at 248–49 (a "disagreement with an employer over terms of employment or an accommodation do[es] not amount to harassment," and a plaintiff still must plead "something more than a *de minimis* harm") (cleaned up); *Harrison*, 82 F.4th at 430–32 (post-*Hamilton*, a Title VII plaintiff must allege a "material" injury, not a *de minimis* one). The R&R does not employ these limits.

C. The Newsroom-Wide Script-Approval Policy Cannot Plausibly Be "Because of Race."

The R&R credits Burroughs' conclusory characterization of the newsroom-wide script-approval policy as a "targeted escalation," *see* R&R [Doc. #24], pp. 15, 22, but a policy that applies to *every* reporter in the newsroom by definition cannot have been imposed "because of" a particular employee's race. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (the plaintiff must allege facts, direct or circumstantial, suggesting that the defendant's actions were taken *because of* the plaintiff's protected characteristic or that similarly situated employees outside the protected class were treated more favorably). Burroughs' own Exhibit Q (Compl. Exhs. [Doc. #1-2], pp. 19, 71) confirms that the policy applied to all journalists in the newsroom. The R&R was required to credit that exhibit over Burroughs' conclusory "targeted escalation" label. *See Riley*, 355 F.3d at 377.

D. The Allegation of Differential Treatment of "White Reporters" Is Conclusory.

Burroughs alleges that "white reporters" were not subjected to the same scrutiny, but the Complaint identifies no specific reporter, no shared role, no overlapping supervisor, and no comparable script-approval episode. The bare assertion that white reporters fared differently is

precisely the kind of "threadbare recital," unsupported by factual content, that *Iqbal* forbids. *Iqbal*, 556 U.S. at 678. Read together with the newsroom-wide script-approval policy applicable to all reporters (Compl. Exhs. [Doc. #1-2], Exh. Q (pp. 19, 71)), Burroughs' conclusory invocation of "white reporters" cannot supply the inference of intentional race discrimination required by *Hamilton*, 79 F.4th at 502, and *Raj*, 714 F.3d at 331.

## IV. Objection Three: Burroughs Fails to State a Plausible ADA Discrimination Claim.

### A. Burroughs Does Not Plausibly Plead She Is a "Qualified Individual."

A "qualified individual" under the ADA is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). Burroughs' own pleadings disprove this element. She affirmatively alleges that her undisclosed "symptoms worsened" in July 2024 to such a degree that she required *complete leave from work* from August through November 19, 2024. Complaint [Doc. #1], pp. 6, 11 (¶18). She characterizes that very leave as FMLA leave to which she was entitled. *Id.*, at p. 6. The Fifth Circuit has held that those positions are mutually exclusive: "an employee seeking FMLA leave is by nature arguing that he cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he can perform the essential functions of the job." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791–92 (5th Cir. 2017).

The R&R sought to bridge that gap between the ADA and FMLA by invoking *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017), for the proposition that "time off, whether paid or unpaid, can be a reasonable accommodation." R&R [Doc. #24], p. 18. That is a partial quotation. *Moss* itself emphasized that though time off may be a reasonable accommodation, *a request for indefinite leave is not*. *See* 851 F.3d at 418-19 (emphasis added);

*see also id.* at 419 ("taking leave … with the intent of never returning is not a reasonable accommodation"). Burroughs' "Medical Inquiry Form Related to an Accommodation Request" dated July 24, 2024, lists only a tentative "possibly" return-to-work date of November 19, 2024 - the very day she resigned without ever returning. Compl. Exhs. [Doc. #1-2], p. 53. That is the kind of indefinite leave that *Moss* forecloses as a basis for ADA "qualified individual" status.

B. The Complaint Pleads No Adverse Employment Action Tied to Disability.

The R&R points to "changes in how [Burroughs] was managed and supervised as she performed her job" as the alleged adverse action after she purportedly "raised her disability concerns in a March 4 grievance." R&R [Doc. #24], p. 19. As will be discussed more thoroughly in Section VI.A below, the March 4 grievance makes *no reference whatsoever* to disability accommodations, anxiety, panic disorder, or anything else related to her alleged disability. *See* Compl. Exhs. [Doc. #1-2], pp. 21-22, 74-75. Burroughs refers to an email from her to Lunn, Dixon and Sirven dated March 8, 2024, as her "Initial request for accommodation 1.png." *See id.*, at pp. 1, 20, 71 (Exh. R). Burroughs does not allege any facts about any change in "how she was managed [or] supervised" after the March 8 request. *See* R&R [Doc. #24], p. 19.

Burroughs' first documented complaint related to her disability is her March 26, 2024, email "recap" of the March 20, 2024, meeting with Lunn, Dixon and Sirven. *See* Compl. Exhs. [Doc. #1-2], pp. 16, 67. The only specific managerial action that occurred after that email was sent is the March 28, 2024, email from Lunn that was not attached to the Complaint offering Burroughs *two* full-time "consistent" schedules in direct response to her ADA accommodation request. Opp. Exh. 14 [Doc. #19-1], pp. 16–17. Granting the requested accommodation cannot plausibly be the *adverse* action that gives rise to disability discrimination liability. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (employer is not required to provide the employee's

preferred accommodation, only a reasonable one). Burroughs' conclusory characterization of the offer as a "demotion" is contradicted by Lunn's email itself (*see* Opp. Exh. 14 [Doc. #19-1], p. 17), which (to the extent the Court deems it to be appropriately central to the allegations in plaintiff's Complaint) the Court must credit over the conclusory pleading. *Riley*, 355 F.3d at 375. After *Muldrow* and *Strife*, a plaintiff still must plead "some harm," 601 U.S. at 354–55, that is "something more than a *de minimis* harm." *Strife*, 138 F.4th at 249. Burroughs has not done so.

## V. Objection Four: Burroughs Fails to State a Plausible ADA Failure-to-Accommodate Claim.

To state an ADA failure-to-accommodate claim Burroughs must plead that (1) she was a qualified individual with a disability, (2) the employer knew of the disability and its consequential limitations, and (3) the employer failed to make reasonable accommodations for those known limitations. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021); *see also Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013).

### A. The R&R Improperly Supplied a Pleading Element by "Implication."

The R&R essentially recognized that Burroughs' Complaint nowhere pleads that she could perform the essential functions of her position with the requested accommodations. R&R [Doc. #24], pp. 19-20. The R&R nevertheless concluded that this element was "implicit in [her] description of her request for accommodation." *Id.*, at p. 20. That holding cannot be reconciled with *Twombly* and *Iqbal*, which require *affirmative* factual allegations of each element of the claim, not implications drawn from the absence of contrary content. *Iqbal*, 556 U.S. at 678 ("a complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face'" (citation omitted)); *Twombly*, 550 U.S. at 555.

B. <u>KTBS Provided the Requested Accommodation</u>.

Burroughs requested two accommodations: a "consistent schedule" and "transfer to an evening shift." Complaint [Doc. #1], p. 5. KTBS responded by offering Burroughs *two* full-time consistent schedules - Monday–Friday or Wednesday–Sunday, 9:30 a.m. to 6:30 p.m. Opp. Exh. 14 [Doc. #19-1], pp. 16–17. "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Agro Distribution*, 555 F.3d at 471. KTBS' offer of two consistent schedules in direct response to the request, schedules her own opposition exhibits show were proposed by Lunn, demonstrates compliance with the ADA. *See* Opp. Exh. 14 [Doc. #19-1], p. 17.

C. <u>The Complaint Pleads No "Consequential Limitations" Known to KTBS.</u>

The Complaint must allege facts identifying the specific consequential limitations of which KTBS knew. *Thompson*, 2 F.4th at 467; *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164–65 (5th Cir. 1996) (employee bears the burden of apprising the employer of both the disability and any limitations requiring accommodation). Burroughs' generic invocations of "anxiety" and "panic disorder," without facts about her specific limitations or how a different schedule would enable her to perform her essential functions, do not satisfy this element. *See Mann v. La. High Sch. Athletic Ass'n*, 535 F.App'x 405, 411–12 (5th Cir. 2013); *Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F.App'x 295, 297-98 (5th Cir. 2012).

**VI. Objection Five: Burroughs Fails to State a Plausible ADA Retaliation Claim.**

An ADA retaliation claim requires (1) protected activity under the ADA, (2) an adverse employment action, and (3) a causal connection. *Strife*, 138 F.4th at 249; 42 U.S.C. §12203(a). The R&R erred at all three elements.

A. <u>The March 4 Grievance Was Not ADA Protected Activity.</u>

The R&R credited Burroughs' March 4, 2024, grievance as ADA-protected activity solely on the strength of her later self-serving characterization in the EEOC Charge that the grievance had been "for race, disability and religious discrimination." R&R [Doc. #24], p. 20. But the grievance email itself, which is attached to the Complaint as Exhibit T which the Court must consider, makes no reference whatsoever to disability, accommodations, anxiety, panic disorder, or any other ADA-protected matter. Compl. Exhs. [Doc. #1-2], pp. 21-22, 74-75. In that email, Burroughs complains only of "harassment" and "bullying" unconnected to any disability. Where, as here, the exhibit attached to the Complaint contradicts a conclusory characterization, the document controls. *Riley*, 355 F.3d at 375.

A vague workplace complaint that does not reference an ADA-protected matter is not protected activity under the ADA. *Gordon*, 622 F.App'x at 431; *Davis*, 448 F.App'x at 493 (Title VII). Burroughs' March 4 grievance is not ADA-protected activity.

B. <u>No Adverse Employment Activity Is Causally Connected to ADA Activity.</u>

Even if the request for an accommodation in spring 2024 (or the July 24, 2024, EEOC Charge) is treated as ADA-protected activity, Burroughs has alleged no causally connected adverse action that survives *Muldrow* and *Strife*. The accommodation that Lunn offered on March 28, 2024, was a benefit, not an injury - it gave Burroughs the very "consistent schedule" her physician requested. *See* Opp. Exh. 14 [Doc. #19-1], pp. 16–17. The R&R's reliance on "temporal proximity", R&R [Doc. #24], pp. 20–21, cannot supply causation in the absence of a non-*de-minimis* adverse action; *Strife* requires "something more than a *de minimis* harm." 138 F.4th at 249. Further, the R&R does not refer to the alleged adverse employment action on which it relies. R&R [Doc. #24], p. 20. Burroughs alleges no facts to support an adverse employment action

occurring after she requested the accommodation, sent the March 26, 2024, email or filed the July 2024 EEOC Charge. She merely alleges that at the follow-up meeting to the March 4 grievance (which had *no reference* to Burroughs' alleged disability, request for accommodation (which had not even yet been made), or any other disability-related comment) she believed that her complaints "*would result* in increased scrutiny," not that it *did result* in increased scrutiny. Complaint [Doc. #1], p. 5.

As explained in Section II.C above and for the reasons stated therein, the claimed four-hour pay deduction allegedly occurring "[a]fter this [follow-up] meeting" does not salvage Burroughs' ADA retaliation claim, either.

The only "event" that Burroughs alleges occurred after she requested an accommodation, complained about a failure to accommodate (in the March 26, 2024, email) or filed the EEOC Charge was her voluntary resignation in November 2024. Even if temporal proximity could supply causation for Burroughs' ADA retaliation claim, a five-month gap between the spring-2024 request and the November 19, 2024, resignation is too remote. *Way v. City of Missouri City*, 133 F.4th 509, 522 (5th Cir. 2025); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (five-month lapse insufficient).

**VII. KTBS Does Not Object to, and Urges Adoption of, the Portions of the R&R that Grant the Motion to Dismiss.**

KTBS respectfully condones, and does not object to, the portions of the R&R that recommend dismissal of (i) the constructive discharge claim for failure to exhaust administrative remedies, R&R [Doc. #24], pp. 4-7; (ii) the FMLA interference claim, *id.*, at pp. 9-10; (iii) the FMLA retaliation claim, *id.*, at p. 11; (iv) the Title VII religious discrimination claim, *id.*, at pp. 12-14; (v) the invasion of privacy/breach of confidentiality state law claim, *id.*, at p. 21; and (vi) the hostile work environment claim, *id.*, at pp. 22-26. The Magistrate Judge's analysis of each of

these claims tracks the controlling Fifth Circuit authority cited by KTBS in its motion, memorandum and reply. KTBS likewise does not object to the Magistrate Judge's recommendation that no further amendment of the Complaint be permitted. *Id.*, at pp. 26-29 (citing *McKinney v. Irving I.S.D.*, 309 F.3d 308, 315 (5th Cir. 2002), and *Scott v. U.S. Bank, N.A.*, 16 F.4th 1204 (5th Cir. 2021)). The District Court should adopt those recommendations.

**VIII. Conclusion.**

For the foregoing reasons, KTBS respectfully requests that the District Court (1) adopt the portions of the R&R that recommend dismissal of Burroughs' constructive discharge, FMLA interference, FMLA retaliation, Title VII religious discrimination, invasion of privacy/breach of confidentiality, and hostile work environment claims, and the recommendation against further amendment; (2) sustain KTBS' objections and reject the R&R's recommendation to deny the Motion to Dismiss as to Burroughs' Title VII race discrimination, Title VII retaliation, ADA discrimination, ADA failure-to-accommodate, and ADA retaliation claims; and (3) dismiss the Complaint with prejudice in its entirety.

Respectfully submitted,

COOK, YANCEY, KING & GALLOWAY
*A Professional Law Corporation*

By: s/ *Elizabeth M. Carmody*
Elizabeth Mendell Carmody, #25792
Luke D. Whetstone, #37355

333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA 71120-2260
Telephone: (318) 221-6277
Facsimile: (318) 227-7850
elizabeth.carmody@cookyancey.com
luke.whetsone@cookyancey.com

ATTORNEYS FOR DEFENDANT,
KTBS, LLC

**CERTIFICATE**

I HEREBY CERTIFY that on the 5th day of May, 2026, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, with notice to be sent by operation of the court's electronic filing system to all counsel of record, and with a copy sent to Plaintiff Chelsie Burroughs, via her email address at Chelsieburroughs83@gmail.com, and via certified US mail, return receipt requested 9589 0710 5270 2956 1454 05, at 9584 Eden Road, Apt. 1318, Arlington, Texas 76002.

s/ *Elizabeth M. Carmody*
OF COUNSEL